1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  BRADLEY A. WEINREB, State Bar No. 157316
   Deputy Attorney General
6    110 West A Street, Suite 1100
   San Diego, CA 92101
7  P.O. Box 85266
   San Diego, CA 92186-5266
8  Telephone: (619) 645-2290
   Fax: (619) 645-2271
9  Email: Bradley.Weinreb@doj.ca.gov

10 Attorneys for Respondent

11          IN THE UNITED STATES DISTRICT COURT

12        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  **VICTOR PARRA,**                        Civil No. 08CV0472 J (LSP)

15                            Petitioner,     **MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN
16        **v.**                              SUPPORT OF ANSWER**

17  **JAMES TILTON, Warden, et al.,**

18                            Respondents.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

PRIOR HISTORY                                                                     1

FACTUAL BACKGROUND                                                               2

ARGUMENT                                                                          3

I.    THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT
      APPLIES TO PARRA'S CLAIM IN GROUND ONE                                      3

II.   BECAUSE THE RECENT *CUNNINGHAM* DECISION CASTS PARRA'S
      CLAIM IN GROUND ONE REGARDING THE IMPOSITION OF AN
      UPPER TERM IN A SIGNIFICANTLY DIFFERENT LIGHT, HIS
      PETITION SHOULD BE STAYED WHILE HE RETURNS TO STATE
      COURT TO SEEK RELIEF UNDER *CUNNINGHAM*; ALTERNATIVELY,
      IF THIS COURT FINDS A STAY INAPPROPRIATE, THE CLAIM IS
      FORECLOSED BY *TEAGUE*; MOREOVER, THE STATE COURT
      REASONABLY REJECTED THE CLAIM AND ANY ERROR WAS
      HARMLESS                                                                    5

      1.    The *Cunningham* Decision                                             6

      2.    Parra's Claim Is Unexhausted And The Petition Should Be Stayed        6

      3.    Imposition Of Upper Term                                              8

            (i)Granting Relief Under *Cunningham* Or *Blakely* Would Violate
            *Teague*                                                              8

            (ii)The California Courts Did Not Unreasonably Apply Supreme Court
      Precedent In Denying Parra's Claim                                          13

            (iii)Any Error Was Harmless                                           15

CONCLUSION                                                                        17

08CV0472 J (LSP)

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

5     Almendarez-Torres v. United States
      523 U.S. 224
      118 S.Ct. 1219
6     140 L.Ed.2d 350 (1998)                                      14

7     Arizona v. Roberson
      486 U.S. 675
8     108 S. Ct. 2093
      100 L. Ed. 2d 704 (1988)                                     9
9
      Arredondo v. Ortiz
10    365 F.3d 778 (9th Cir. 2004)                                 8

11    Beard v. Banks
      542 U.S. 406
12    124 S. Ct. 2504
      159 L. Ed. 2d 494 (2004)                                     8
13
      Bell v. Cone
14    535 U.S. 685
      122 S. Ct. 1843
15    152 L. Ed. 2d 914 (2002)                                     3

16    Bell v. Jarvis
      236 F.3d 149 (4th Cir. 2000)                                 4
17
      Blair v. California
18    340 F.2d 741 (9th Cir. 1965)                                 7

19    Blakely v. Washington
      524 U.S. 296
20    124 S. Ct. 2531
      59 L. Ed. 2d 403 (2004)                               2, 5, 9-15
21
      Bowen v. Roe
22    188 F.3d 1157 (9th Cir. 1999)                                9

23    Brecht v. Abramhamson
      507 U.S. 619
24    113 S. Ct. 1710
      123 L. Ed. 2d 353 (1993)                                    15
25
      Butler v. McKellar
26    494 U.S. 407
      110 S. Ct. 1212
27    108 L. Ed. 2d 347 (1990)                                     9

28

TABLE OF AUTHORITIES  (continued)

Page

Campanale v. Harris
724 F.2d 276 (2d Cir. 1983)                                              7

Caspari v. Bohlen
510 U.S. 383
114 S. Ct. 948
127 L. Ed. 2d 236 (1994)                                          8, 9, 15

Cooper-Smith v. Palmateer
397 F.3d 1236 (9th Cir. 2005)
cert. denied
126 S. Ct. 442
163 L. Ed. 2d 336 (2005)                                               10

Cunningham v. California
__ U.S. __
127 S. Ct. 856
166 L. Ed . 2d 856 (2007)                              5-7, 9, 11, 12, 14

Delgado v. Lewis
223 F.3d 976 (9th Cir. 2000)
overruled on other grounds by
Lockyer v. Andrade
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003)                                                4

Duncan v. Henry
513 U.S. 364
115 S. Ct. 887
130 L. Ed. 2d 865 (1995)                                                6

Early v. Packer
537 U.S. 3
123 S. Ct. 362
154 L. Ed. 2d 263 (2002)                                                4

Espinosa v. Florida
505 U.S. 1079
112 S. Ct. 2926
120 L. Ed. 2d 854 (1992)                                               12

Estelle v. McGuire
502 U.S. 62
1125 S. Ct. 475
116 L. Ed. 2d 385 (1991)                                                3

Fry v. Pliler
__ U.S. __
127 S. Ct. 2321
168 L. Ed. 2d 16 (2007)                                                15

08CV0472 J (LSP)

## TABLE OF AUTHORITIES  (continued)

1

**Page**

2

3  Graham v. Collins
   506 U.S. 461
   113 S. Ct. 892
4  122 L. Ed. 2d 260 (1993)                                              9

5  Hayes v. Brown
   399 F.3d 972 (9th Cir. 2005)                                          8

6
   Himes v. Thompson
7  336 F.3d 848 (9th Cir. 2003)                                          4

8  Horn v. Banks
   536 U.S. 266
9  122 S. Ct. 2147
   153 L. Ed. 2d 301 (2002)                                              8

10
   Johnson v. Texas
11 509 U.S. 350
   113 S. Ct. 2658
12 125 L. Ed. 2d 290 (1993)                                              9

13 Johnson v. Zenon
   88 F.3d 828 (9th Cir. 1996)                                          6

14
   Lambrix v. Singletary
15 520 U.S. 518
   117 S. Ct. 1517
16 137 L. Ed. 3d 771 (1997)                                             12

17 Lindh v. Murphy
   521 U.S. 320
18 117 S. Ct. 2059
   138 L. Ed. 2d 481 (1997)                                         3, 4, 13

19
   Marshall v. Longberger
20 459 U.S. 422
   103 S.  Ct. 843
21 74 L. Ed. 2d 646 (1983)                                               4

22 O'Dell v. Netherland
   521 U.S. 151
23 117 S. Ct. 1969
   138 L. Ed. 2d 351 (1997)                                          10, 12

24
   Pennsylvania ex rel. Raymond v. Rundle
25 339 F.2d 598 (3d Cir. 1964)                                          7

26 People v. Black
   41 Cal.4th 799 (2007)                                       5, 6, 10, 11, 14

27
   People v. Black
28 35 Cal.4th 1238 (2005)                                          5, 6, 12

**TABLE OF AUTHORITIES  (continued)**

**Page**

People v. Osband
13 Cal. 4th 622
55 Cal. Rptr. 2d 26 (1996)                                          14, 15

People v. Sandoval
41 Cal.4th 825 (2007)                                                    5

Picard v. Connor
404 U.S. 270
92 S. Ct. 509
30 L. Ed. 2d 438 (1971)                                                6, 7

Pliler v. Ford
542 U.S. 225
124 S. Ct. 2441
159 L. Ed. 2d 338 (2004)                                                  7

Price v. Vincent
538 U.S. 634
123 S. Ct. 1848
155 L. Ed. 2d 877 (2003)                                                 13

Rhines v. Weber
544 U.S. 269
125 S. Ct. 1528
161 L. Ed. 2d 440 (2005)                                                  7

Ring v. Arizona
536 U.S. 584
122 S. Ct. 2428
153 L. Ed. 2d 556 (2002)                                                 11

Rose v. Lundy
455 U.S. 509
102 S. Ct. 1198
71 L. Ed. 2d 379 (1982)                                                6, 7

Saffle v. Parks
494 U.S. 484
110 S. Ct. 1257
108 L. Ed. 2d 415 (1990)                                                 13

Schardt v. Payne
414 F.3d 1025 (9th Cir. 2005)                                         11-13

Schriro v. Summerlin
542 U.S. 348
124 S. Ct. 2519
159 L. Ed. 2d 442 (2004)                                                 11

## TABLE OF AUTHORITIES  (continued)

**Page**

Simmons v. South Carolina
512 U.S. 154
114 S. Ct. 2187
129 L. Ed. 2d 133 (1994)                                        9, 12

Skipper v. South Carolina
476 U.S. 1
106 S. Ct. 1669
90 L. Ed. 2d 1 (1986)                                              9

St. Pierre v. Helgemoe
545 F.2d 1306 (1st Cir. 1976)                                     7

State v. Gomez
163 S.W.3d 632 (Tenn. 2005)
judgment vacated and remanded
___ U.S. ___
2007 WL 505900 (2007)                                           12

State v. Lopez
123 P.3d 754 (N.M. 2005)                                        12

State v. Maugaotega
114 P.3d 905 (Haw. 2005)                                        12

Teague v. Lane
489 U.S. 288
109 S. Ct. 1060
103 L. Ed. 2d 334 (1989)                                         8

Tyler v. Cain
533 U.S. 656
121 S. Ct. 2478
150 L. Ed. 2d 632 (2001)                                         4

United States v. Booker
543 U.S. 220
125 S. Ct. 738
160 L. Ed. 2d 621 (2005)                                       6, 10

United States v. Booker
543 U.S. 220
125 S. Ct. 738
160 L. Ed. 2d 621 (2005)                                       6, 9-14

United States v. Cruz
423 F.3d 1119 (9th Cir. 2005)
cert. denied
126 S. Ct. 1181
163 L. Ed. 2d 1138 (2006)                                      11, 12

## TABLE OF AUTHORITIES  (continued)

| | Page |
|---|---|
| Werts v. Vaughn<br>228 F.3d 178 (3d Cir. 2000) | 6 |
| Whorton v. Bockting<br>___ U.S. ___<br>127 S. Ct. 1173<br>167 L. Ed. 2d 1 (2007) | 12 |
| Williams v. Craven<br>460 F.2d 1253 (9th Cir. 1972) | 6 |
| Williams v. Taylor<br>529 U.S. 362<br>120 S. Ct. 1495<br>146 L. Ed. 2d 389 (2000) | 4 |
| Woodford v. Visciotti<br>537 U.S. 19<br>123 S. Ct. 357<br>154 L. Ed. 2d 279 (2002) | 3, 13 |
| Ylst v. Nunnemaker<br>501 U.S. 797<br>111 S. Ct. 2590<br>115 L. Ed. 2d 706 (1991) | 4 |

**Constitutional Provisions**

| | |
|---|---|
| Sixth Amendment | 11-14 |

**Statutes**

| | |
|---|---|
| 28 United States Code | |
| § 2254 | 15 |
| § 2254(b) | 6 |
| § 2254(d) | 3 |
| § 2254(d) | 3, 13 |
| § 2254(e)(1) | 4 |
| Penal Code | |
| § 1170 | 7 |
| § 1170(b) | 6, 14 |
| § 4501.5 | 1 |

**Other Authorities**

| | |
|---|---|
| Antiterrorism and Effective Death Penalty Act of 1996 | 3-5, 8 |

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  BRADLEY A. WEINREB, State Bar No. 157316
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone: (619) 645-2290
     Fax: (619) 645-2271
9    Email: Bradley.Weinreb@doj.ca.gov

10 Attorneys for Respondent

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 **VICTOR PARRA,**                              Civil No. 08CV0472 J (LSP)

15                              Petitioner,
                                                 **MEMORANDUM OF POINTS**
16      v.                                       **AND AUTHORITIES IN**
                                                 **SUPPORT OF ANSWER**
17 **JAMES TILTON, Warden, et al.,**

18                              Respondents.

19

20                      **PRIOR HISTORY**

21        On October 4, 2005, an Imperial County Superior Court jury convicted Parra of battery

22 upon a correctional officer while confined in a state prison. Cal. Penal Code § 4501.5. (CT 134-135,

23 137.)[1]/ On November 18, 2005, the trial court imposed an aggravated four-year prison term, to run

24 consecutive to the prison term already being served. (CT 152-153.)

25        On October 11, 2006, the State Court of Appeal affirmed the conviction and judgment,

26 ─────────────────────────────────

27      1. Respondent has concurrently lodged relevant state court records. For ease of references
   Respondent will refer to Lodgment 1 as "Clerk Transcript [CT]" and Lodgment 2 as "Reporter's
28 Transcript [RT]."

1  rejecting Parra's claim that under *Blakely v. Washington*, 524 U.S. 296, 124 S. Ct. 2531, 159 L. Ed.

2  2d 403 (2004), he was entitled to a jury trial before the aggravated prison term could be imposed.

3  (Lodgment 3.) Parra filed a Petition for Review that raised this claim on November 14, 2006. On

4  December 20, 2006, the California Supreme Court denied review without prejudice to any relief

5  Parra might be entitled to after determination of the-then pending case of *Cunningham v. California*

6  (05-6551). (Lodgment Nos. 4 and 5.)

7        Parra filed the instant Petition on March 13, 2008.

8                            **FACTUAL BACKGROUND**

9        On the morning of November 21, 2003, prisoners staged a riot in the yard of Calipatria

10 State Prison after a fight had earlier broken out in the yard. During the attack on the guards, one

11 inmate yelled, "Get the cops." (3 RT 62-63, 68, 84.) Parra walked up to Correctional Officer

12 Anthony J. Biondo and unprovoked, struck him in the chest. (3 RT 71.) Officer Biondo had known

13 Parra for about a year. (3 RT 78.)

14        During the ensuing riot, Officer Biondo had been pepper sprayed and it obscured vision

15 in his right eye at the time Parra attacked him. However, he explained that his left eye was

16 unaffected and he had no vision problems within that eye. (3 RT 69-70.)

17        After Parra hit Officer Biondo, Officer Biondo pulled Parra to the ground and other

18 officers came over to help restrain Parra. (3 RT 72-73.) Officer Malvern Senkel observed Officer

19 Biondo rolling on the ground with Parra and came over to assist. (3 RT 148-152.) Officer Senkel

20 struck Parra with his baton on the left knee and then turned his attention to another nearby officer,

21 attacked by another inmate who had managed to get hold of Officer Biondo's baton in the chaos of

22 the riot. (RT 150-152.) Despite his brief involvement, Officer Senkel was "a hundred percent"

23 certain Officer Biondo struggled with Parra. (3 RT 161-162.)

24        Officer Robert Lomer III also observed Officer Biondo and Parra struggling on the ground

25 and even saw Parra strike Officer Biondo several times in the chest. Officer Lomer came over and

26 forced Parra to the ground and then handcuffed him. Once Officer Lomer decided Officer Biondo

27 could "take care of the incident," he responded to another area of inmates attacking guards. (3 RT

28 167-168.) Officer Lomer took a week off work after the incident. When he returned, he looked at

1   a bundle of inmate photos to better identify the participants and recognized Parra as Officer Biondo's

2   attacker. (3 RT 175.)

3

**ARGUMENT**

4

**I.**

5

**THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT**

6   **APPLIES TO PARRA'S CLAIM IN GROUND ONE**

7

8        Federal habeas lies only to correct violations of the United States Constitution, as

9   determined by the United States Supreme Court. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S.

10  62, 68, 1125 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Because Parra filed his Petition after April 24,

11  1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[2/].

12  *Lindh v. Murphy*, 521 U.S. 320, 336-38, 117 S. Ct. 2059, 2068, 138 L. Ed. 2d 481 (1997).   The

13  enactment of AEDPA was intended to prevent federal habeas "retrials" and ensure that state court

14  convictions are "given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693, 122

15  S. Ct. 1843, 1849, 152 L. Ed. 2d 914 (2002).

16        Parra may not receive relief unless the state-court decisions were "contrary to, or involved

17  an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

18  of the United States" or were based on "an unreasonable determination" of the state court evidence.

19  28 U.S.C. § 2254(d).  This "'highly deferential standard'" demands that federal courts give state

20  court decisions "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357,

21

--------------------------------------------------------------

22  2. 28 U.S.C. § 2254(d) provides:

23  (d) An application for a writ of habeas corpus on behalf of a person in custody
    pursuant to the judgment of a State court shall not be granted with respect to any

24  claim that was adjudicated on the merits in State court proceedings unless the
    adjudication of the claim –

25
            (1) resulted in a decision that was contrary to, or involved an

26          unreasonable application of, clearly established Federal law, as
            determined by the Supreme Court of the United States or;

27          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the

28          State court proceeding.

1  360, 154 L. Ed. 2d 279 (2002), *quoting Lindh*, 521 U.S. at 333, n.7; *Williams v. Taylor*, 529 U.S.

2  362, 404-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

3       In determining what constitutes federal law for purposes of the deference standard, only

4  United States Supreme Court decisions, not circuit court authority, are controlling. *Williams v.*

5  *Taylor*, 529 U.S. at 412. Moreover, a federal court may reverse only if the state decision is contrary

6  to the holdings (as opposed to dicta) of the United States Supreme Court. *Tyler v. Cain*, 533 U.S.

7  656, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001), *citing Williams*, 529 U.S. at 412.

8       AEDPA also addresses state court factual findings in section 2254(e)(1), which provides

9  that such findings "shall be presumed to be correct" and places on the petitioner "the burden of

10  rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

11  The presumption of correctness applies not only to express findings of fact, but also applies equally

12  to unarticulated findings that are necessary to the state court's conclusions of mixed questions of fact

13  and law. *See, e.g.*, *Marshall v. Longberger*, 459 U.S. 422, 433, 103 S. Ct. 843, 74 L. Ed. 2d 646

14  (1983) (application of presumption to credibility determination which was implicit in rejection of

15  defendant's claim); *Bell v. Jarvis*, 236 F.3d 149, 158-60 (4th Cir. 2000) (de novo, independent, or

16  plenary review of state court adjudications is no longer appropriate).

17       Where there is no reasoned decision from the state's highest court, the Court "looks

18  through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06, 111

19  S. Ct. 2590, 115 L. Ed. 2d 706 (1991). If the dispositive state court order does not "furnish a basis

20  for its reasoning," federal habeas courts must conduct an independent review of the record to

21  determine whether the state court's decision is contrary to, or an unreasonable application of, clearly

22  established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled*

23  *on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 75-6, 123 S. Ct. 1166, 155 L. Ed. 2d 144

24  (2003)); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite

25  Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8, 123

26  S. Ct. 362, 154 L. Ed. 2d 263 (2002). "[S]o long as neither the reasoning nor the result of the state-

27  court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be

28  "contrary to" clearly established federal law.

1        Respondent asserts that Parra's claim in Ground One that his constitutional rights were

2    violated when the state trial court imposed an upper term at sentencing is unexhausted. (*See*

3    Argument II, *infra*.) To the extent it is determined to be exhausted, Respondent addresses Parra's

4    claim in Ground One under the AEDPA.

5                                **II.**

6

7    **BECAUSE THE RECENT *CUNNINGHAM* DECISION CASTS PARRA'S CLAIM IN GROUND ONE REGARDING THE IMPOSITION OF AN UPPER TERM IN A SIGNIFICANTLY DIFFERENT LIGHT, HIS PETITION SHOULD BE STAYED WHILE HE RETURNS TO STATE COURT TO SEEK RELIEF UNDER *CUNNINGHAM*; ALTERNATIVELY, IF THIS COURT FINDS A STAY INAPPROPRIATE, THE CLAIM IS FORECLOSED BY *TEAGUE*; MOREOVER, THE STATE COURT REASONABLY REJECTED THE CLAIM AND ANY ERROR WAS HARMLESS**

8

9

10

11

12        In his claim for relief in Ground One, Parra contends that under *Cunningham* he was

13    denied his constitutional right to have a jury determine beyond a reasonable doubt all of the facts

14    legally essential to his sentence because the state trial court imposed the upper term for his battery

15    conviction. (Petition at 7-8.) The Supreme Court's decision in *Cunningham v. California*, __ U.S.

16    __, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), casts Parra's claim in a significantly different light.

17    Therefore, Parra should be required to return to state court and present his claim again, in light of

18    *Cunningham*.[3/] While Parra returns to state court, the Petition in this case should be stayed. In the

19    alternative, if this Court determines a stay is inappropriate, the claim should be denied because

20    *Cunningham* creates a new rule under *Teague* that cannot be retroactively applied. Moreover, under

21    the AEDPA, the state courts reasonably rejected the claim. Error, if any, was harmless.

22

23    _____

24        3. As noted above, Parra challenged imposition of the upper term in the Court of Appeal and sought review in the California Supreme Court, based on the decisions of decision of *Blakely v. Washington*, 542 U.S. at 296 and *People v. Black*, 35 Cal.4th 1238 (2005). The California Supreme Court denied review without prejudice to any relief which Parra might be afforded after the *Cunningham* decision. (Lodgment 5.)

25

26        Following *Cunningham* and under current California law, a court may impose an upper term for a single aggravating factor, found by a jury, admitted by the defendant or facts relating to prior convictions. *People v. Sandoval*, 41 Cal.4th 825, 835-37 (2007); *People v. Black [Black II]*, 41 Cal.4th 799, 812-20 (2007).

27

28

08CV0472 J (LSP)

1    **1. The *Cunningham* Decision**

2     In *Cunningham*, 127 S. Ct. 856, the United States Supreme Court held that California's

3 procedure for selecting upper terms violates the defendant's Sixth and Fourteenth Amendment right

4 to jury trial because it "assigns to the trial judge, not to the jury, authority to find the facts that

5 expose a defendant to an elevated 'upper term' sentence." *Id.* at 860. The Court explained, "the

6 Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to

7 impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not

8 found by a jury or admitted by the defendant." *Id.* (citing, inter alia, *Apprendi v. New Jersey*, 530

9 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), *Blakely*, 542 U.S. at 296, and *United States v.*

10 *Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)). The Court found that because

11 California Penal Code section 1170(b), and the implementing California Rules of Court, allow for

12 imposing an upper term only by a fact that a judge finds by a preponderance of the evidence, the jury

13 trial and reasonable doubt requirements of due process are missing in California's "DSL" system.

14 *Cunningham*, 127 S. Ct. at 868. In reaching this decision, the high court rejected *Black*, 35 Cal. 4th

15 at 1255-56, 1261, the California Supreme Court's decision holding that California's upper term

16 procedure was constitutional under *Apprendi*, *Blakely*, and *Booker*. *Cunningham*, 127 S. Ct. at 868-

17 71.

18    **2. Parra's Claim Is Unexhausted And The Petition Should Be Stayed**

19     Exhaustion of state remedies is a prerequisite to a federal court's consideration of claims

20 sought to be presented in federal habeas corpus. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S.

21 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir.

22 1996). The exhaustion requirement is grounded in concerns for comity. *Rose v. Lundy*, 455 U.S.

23 509, 515, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). To satisfy the state exhaustion requirement,

24 petitioners must fairly present their federal claims to the state's highest court. *Duncan v. Henry*, 513

25 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995). Petitioners have the burden of

26 demonstrating they have exhausted available state remedies. *Williams v. Craven*, 460 F.2d 1253,

27 1254 (9th Cir. 1972); *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). If a petition includes

28 both exhausted and unexhausted claims, it constitutes a "mixed petition" that must be dismissed or

1    the unexhausted claims stricken. *Pliler v. Ford*, 542 U.S. 225, 230, 124 S. Ct. 2441, 159 L. Ed. 2d

2    338 (2004) (*citing Rose*, 455 U.S. at 522); *but see Rhines v. Weber*, 544 U.S. 269, 125 S. Ct. 1528,

3    1534-35, 161 L. Ed. 2d 440 (2005).

4        The exhaustion requirement is not met if there is an intervening change in federal law that

5    casts the legal issue in a fundamentally different light. *Picard*, 404 U.S. at 276; *Campanale v.*

6    *Harris*, 724 F.2d 276, 282 (2d Cir. 1983); *St. Pierre v. Helgemoe*, 545 F.2d 1306, 1309 (1st Cir.

7    1976); *Blair v. California*, 340 F.2d 741, 743-44 (9th Cir. 1965); *Pennsylvania ex rel. Raymond v.*

8    *Rundle*, 339 F.2d 598, 598-99 (3d Cir. 1964). Thus,

9       a state prisoner who believes that some decision of the United States Supreme Court
10       subsequent to the state court decision in his case requires that his conviction or sentence
       be set aside should first pursue any state remedy which may be available to present that
       contention before applying for a federal writ of habeas corpus.
11
   *Blair*, 340 F.2d at 745.
12

13        Here, to the extent Parra seeks application of *Cunningham* to his case, he should return to

14    the state court to present his upper term sentencing claim in light of *Cunningham*. *Cunningham* casts

15    the constitutionality of California's sentencing scheme in a fundamentally different light by rejecting

16    the California Supreme court's contrary decision in *Black*. And Parra should be able to obtain any

   appropriate relief in state court presumably under post-*Cunningham* case law and legislation which
17
   amended California Penal Code section 1170 to comply with the *Cunningham* decision. *See* Cal.
18
   S.B. 40 (2007-2008 Reg. Sess.), as amended Jan. 25, 2007.
19

20        To satisfy the exhaustion requirement and its principles of comity, Parra should return to

21    state court to seek application of *Cunningham* to his case. That way, the state courts will have the

22    first opportunity to address *Cunningham's* rejection of *Black*, to apply any applicable exceptions and

23    consider whether any error was prejudicial, and to fashion the appropriate remedy for any prejudicial

   *Cunningham* violation. *See Cunningham*, 127 S. Ct. at 871 ("As to the adjustment of California's
24
   sentencing system in light of our decision, '[t]he ball . . . lies in [California's] court.'"). Indeed, this
25
   is the very remedial option offered to parra by the California Supreme Court. In the meantime, the
26
27    Petition should be stayed providing that Parra seeks relief diligently in state court. *See Rhines*, 544

28    U.S. at 277-78 (permitting stay and abeyance for good cause, with reasonable time limits).

08CV0472 J (LSP)

1          **3.    Imposition Of Upper Term**

2          In the event this Court finds that pursuit of Parra's claim in state court is inappropriate and

3    chooses to address the merits of the claim, federal habeas relief is simply not warranted[4/]

4                    **(i)    Granting Relief Under *Cunningham* Or *Blakely* Would Violate**
                     ***Teague***
5

6          In *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) the Supreme

7    Court held that a new rule of constitutional law cannot be applied retroactively on federal collateral

8    review to upset a state conviction or sentence unless the new rule forbids criminal punishment of

9    primary, individual conduct or is a "watershed" rule of criminal procedure. *Caspari v. Bohlen*, 510

10   U.S. 383, 396, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994).  The Supreme Court has repeatedly

11   emphasized that federal habeas courts must first decide whether *Teague* is implicated before

12   considering the merits of a claim if the state argues that the petitioner seeks the benefit of a new rule.

13   *Beard v. Banks*, 542 U.S. 406, 412, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004).  This is true

14   regardless of whether the case is governed by the AEDPA. *Horn v. Banks*, 536 U.S. 266, 272, 122

15   S. Ct. 2147, 153 L. Ed. 2d 301 (2002); *see generally Arredondo v. Ortiz*, 365 F.3d 778, 781-82 (9th

16   Cir. 2004) (identifying proper manner of raising *Teague* argument on appeal).

17         *Teague* involves a three-step analysis. *Hayes v. Brown*, 399 F.3d 972, 982 (9th Cir. 2005).

18   First, the court must determine the conviction's finality date. *Id.*  Second, the rule is considered new

19   unless, after, the court "survey[s] the legal landscape as it then existed," it determines that "existing

20   precedent compelled a finding that the rule at issue was required by the Constitution." *Id.* (citations

21   and internal quotation marks omitted).  Thus, a rule is not constitutionally compelled if the survey

22   shows that "reasonable jurists" could differ about the outcome. *Caspari*, 510 U.S. at 395.  Third,

23   if the rule is new, the court "must consider whether it falls within either of the two exceptions to

24   nonretroactivity." *Beard*, 542 U.S. at 411.

25

26   _____

27         4. The factual background for Parra's upper term claim is that there existed three aggravating
     factors, namely, that the crime involved a great threat of bodily harm beyond mere battery, violent
28   conduct which indicated a serious danger to society, and numerous prior and increasingly serious
     convictions.  (5 RT 404.)

1    A conviction is final under *Teague* "when the availability of direct appeal to the state

2    courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a

3    timely filed petition has been finally denied." *Caspari*, 510 U.S. at 390. Here, Parra's petition for

4    review was denied by the California Supreme Court on December 20, 2006. (Lodgment 5.)

5    Accordingly, his conviction became final ninety days later when the time for a petition for writ of

6    certiorari expired, on March 20, 2007. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

7    Moreover, a survey of the relevant case law reveals that "reasonable jurists . . . 'would

8    [not] have deemed themselves compelled to accept [Petitioner's] claim'" that his right to jury trial

9    was violated when his conviction became final on March 20, 2007. *Johnson v. Texas*, 509 U.S. 350,

10    366, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993) (*quoting Graham v. Collins*, 506 U.S. 461, 477, 113

11    S. Ct. 892, 122 L. Ed. 2d 260 (1993)). It is true that the Supreme Court recently declared that

12    California's upper term sentencing system violates the right to a jury trial in *Cunningham*, finding

13    the dissent's comparison with the post-*Booker* federal system "unavailing." *Cunningham*, 127 S.

14    Ct. at 870. But the fact that the Supreme Court has *now* decided that California's upper term

15    sentencing system violates *Blakely* does not mean that reasonable jurists would have been compelled

16    to reach that conclusion *prior* to the Court's decision in *Cunningham*. *See Butler v. McKellar*, 494

17    U.S. 407, 415, 110 S. Ct. 1212, 108 L. Ed. 2d 347 (1990) (finding *Miranda* case of *Arizona v.

18    Roberson*, 486 U.S. 675, 108 S. Ct. 2093, 100 L. Ed. 2d 704 (1988), to be a new rule under *Teague*,

19    despite the *Roberson* majority's conclusion that it was "directly controlled" by prior precedent,

20    reasoning that "[c]ourts frequently view their decisions as being 'controlled' or 'governed' by prior

21    opinions even when aware of reasonable contrary conclusions reached by other courts").

22    Illustrating this principle in a capital context, the Supreme Court has held that its own

23    decision could not be applied retroactively because it created a new rule. In *Skipper v. South

24    Carolina*, 476 U.S. 1, 4-5, 8, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986), the Court concluded that it was

25    unconstitutional for the death penalty to be imposed on the basis of information of future

26    dangerousness that the defendant had no opportunity to deny or explain. Later, in *Simmons v. South

27    Carolina*, 512 U.S. 154, 168-69, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994), the Court held that

28    defendants must be allowed to inform their capital sentencing jury of their parole ineligibility

1   whenever the prosecution contends they are a future danger. In *O'Dell v. Netherland*, 521 U.S. 151,

2   117 S. Ct. 1969, 138 L. Ed. 2d 351 (1997), the Court addressed whether *Simmons* was a new rule

3   under *Teague*. The Court rejected the argument that *Simmons* "presented merely a variation on the

4   facts of *Skipper*," wherein "*Skipper* was unconstitutionally prevented from demonstrating that he had

5   behaved in prison and thus would not be a danger to his fellow prisoners." *O'Dell*, 521 U.S. at 161.

6   The Supreme Court found the *Simmons* rule new because a reasonable jurist could have made a

7   "distinction between information about a defendant [i.e., *Skipper*] and information concerning the

8   extant legal regime [i.e., *Simmons*]." *Id.* at 165. Just as *Simmons* was not necessarily dictated by

9   *Skipper*, the recent *Cunningham* decision was not necessarily dictated by the Court's prior precedent.

10          In this regard, the Ninth Circuit's treatment of *Apprendi*, *Blakely*, and *Booker*, the earlier

11   seminal cases in this area, unavoidably shows that *Cunningham* also was not dictated by prior

12   precedent.  In each of these three cases, the defendant received punishment *above* the upper-most

13   point of the initial prescribed sentencing range for the crime, based on a fact not found by the jury

14   or admitted by the defendant.  In each case, the Supreme Court held that the defendant had the right

15   to have the jury decide the existence of that fact. *Booker*, 543 U.S. at 226-37 (right to have jury find

16   fact raising the sentence from 262 months, the top of the "'base' sentence" of 210 to 262 months for

17   the crime, to thirty years, where a separate grid box and a separate statute allowed for a life cap);

18   *Blakely*, 542 U.S. at 298-305, 308-9 (right to have jury find fact raising the sentence from fifty-three

19   months, the top of the "standard range" of forty-nine to fifty-three months for the crime, to ninety

20   months, where a separate "exceptional sentence" provision allowed for a ten-year cap); *Apprendi*,

21   530 U.S. at 490 (right to have jury find fact raising sentence from ten years, the top of the "penalty

22   range" of five to ten years for the crime, to twelve years, where a separate "hate crime" provision

23   allowed for a twenty-year cap).

24          Although the holdings of *Apprendi*, *Blakely*, and *Booker* have some facial similarity --

25   finding a violation of the defendant's jury trial right in imposing a sentence above the crime's initial

26   range based on facts not found by the jury -- each of these cases created a new rule under *Teague*.

27   The Ninth Circuit has held that *Apprendi* announced a new rule that may not be applied retroactively

28   to convictions final before its issuance. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir.

08CV0472 J (LSP)

2005), *cert. denied*, 126 S. Ct. 442, 163 L. Ed. 2d 336 (2005). Although *Blakely* had facial similarity to *Apprendi*, the Ninth Circuit nonetheless held that *Blakely* also created a new rule under *Teague*. *Schardt v. Payne*, 414 F.3d 1025, 1027, 1038 (9th Cir. 2005). The court held that *Blakely* was not dictated by *Apprendi*, noting that several circuit courts had reached the opposite conclusion from *Blakely. Id.* at 1035. Similarly, the Ninth Circuit determined that *Booker*, applying *Blakely* to the federal guidelines, constituted a new rule under *Teague*, noting that justices had dissented in *Booker. United States v. Cruz*, 423 F.3d 1119, 1120-21 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1181, 163 L. Ed. 2d 1138 (2006).[5/] Just as each of the decisions in *Booker*, *Blakely*, and *Apprendi*, arising in different contexts, created new rules, the recent decision in *Cunningham* created a new rule: imposition of an upper term *within* the initial prescribed sentencing range, based on a fact not found by a jury, violates the right to jury trial, even where the trial court has broad discretion that is reviewed for reasonableness.

Significantly, the Court's grant of review in *Cunningham* suggests that its holding was not dictated by prior precedent. In this regard, an important question of federal constitutional law needed to be "settled," presumably because the answer was not all clear. *See* Sup. Ct. R. 10(c). Indeed, in the final analysis, not all the members of the Court agreed on the answer; rather, three justices dissented. *Cunningham*, 127 S. Ct. at 876-81 (Alito, J., dissenting); *see United States v. Cruz*, 423 F.3d at 1120 (noting dissenting opinions in *Booker*).

Further, the conclusion that California's scheme complied with *Booker* in particular, while now found to be incorrect, was nonetheless reasonable before *Cunningham*. In *Booker*, the Court found the mandatory Federal Sentencing Guidelines violated the Sixth Amendment, but the Court judicially rendered the Guidelines as factors to be considered, and allowed that a sentence would ultimately be subject to a "reasonableness" review. *Booker*, 543 U.S. at 226-37, 248-65. Although the *Cunningham* majority ultimately instructed there is "no room for such an examination,"

---

5. The Supreme Court has also held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), which applied *Apprendi* to Arizona's capital sentencing scheme, was a new procedural rule that could not be retroactively applied under *Teague. Schriro v. Summerlin*, 542 U.S. 348, 353-58, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

1   *Cunningham*, 127 S. Ct. at 869, the *Cunningham* dissent found that California's upper term

2   sentencing was "indistinguishable" from this reformed sentencing scheme approved in *Booker*,

3   *Cunningham*, 127 S. Ct. at 869 (Alito, J., dissenting); *id.* at 876 (finding California's upper term

4   sentencing scheme was "not meaningfully different" from reformed scheme approved in *Booker*).

5   *See Simmons*, 512 U.S. at 164 (finding that a contrary holding "cannot be reconciled with our well-

6   established precedents"); *O'Dell*, 521 U.S. at 165 (*Simmons* is a new rule under *Teague*).

7          Also, prior to *Cunningham*, at least two other state supreme courts with similar systems

8   rejected claims that their systems violated the Sixth Amendment in light of *Booker* and *Blakely*. *See*

9   *State v. Lopez*, 123 P.3d 754, 761-68 (N.M. 2005) (concluding its mandatory scheme complied with

10  *Booker* and *Blakely* since it imposed a standard of reasonableness); *State v. Gomez*, 163 S.W.3d 632,

11  661-62 (Tenn. 2005), *judgment vacated and remanded*, ___ U.S. ___, 2007 WL 505900 (No. 05-

12  296, Feb. 20, 2007); *see also State v. Maugaotega*, 114 P.3d 905, 916 (Haw. 2005).  Many panels

13  of a "sharply divided" California Court of Appeal, and subsequently the California Supreme Court

14  itself, also found California's procedure constitutional, analogizing it to the system of reasonableness

15  approved in the *Booker* remedial opinion. *See Black*, 35 Cal. 4th at 1253; *Id.* at 1244, 1259.  The

16  large number of jurists finding that California's upper term sentencing scheme and similar statutes

17  did not violate the Sixth Amendment demonstrates that the outcome in *Cunningham* was not so clear

18  that no reasonable jurist could have reached a contrary result. *See Cruz*, 423 F.3d at 1120; *Schardt*,

19  414 F.3d at 1035; *see also Lambrix v. Singletary*, 520 U.S. 518, 117 S. Ct. 1517, 137 L. Ed. 3d 771

20  (1997) (the capital case of *Espinosa v. Florida*, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854

21  (1992), holding that the judge and jury in a weighing state may not weigh invalid aggravating

22  circumstances, is a new rule because reasonable jurists could have reached a different outcome based

23  on different approaches to prior precedent).

24          Thus, in light of the legal landscape at the time Parra's conviction became final March 20,

25  2007, reasonable jurists would not have felt compelled to reach the same conclusion as *Cunningham*.

26  *See Whorton v. Bockting*, ___ U.S. ___, 127 S. Ct. 1173, 1181, 167 L. Ed. 2d 1 (2007) ("The new

27  rule principle . . . validates reasonable, good-faith interpretations of existing precedents made by

28  state courts even though they are shown to be contrary to later decisions").  Even though the

1  Supreme Court has now clarified that California's upper term sentencing violates the Sixth

2  Amendment, granting relief to Parra would require retroactive application of a new rule under

3  *Teague*.

4        The third and final inquiry is whether the new rule falls into one of *Teague's* exceptions,

5  under which a new rule may be given retroactive effect on collateral review. The first exception is

6  inapplicable because the rule announced in *Cunningham* does not place conduct beyond the reach

7  of criminal law or "decriminalize" any class of conduct. *See Saffle v. Parks*, 494 U.S. 484, 495, 110

8  S. Ct. 1257, 108 L. Ed. 2d 415 (1990). The *Cunningham* rule also is not a "watershed exception"

9  because, as the Ninth Circuit put it, "we cannot confidently say that judicial factfinding *seriously*

10 diminishes accuracy." *See Schardt*, 414 F.3d at 1036 (*Blakely* does not satisfy the watershed-rule

11 exception to *Teague*).

12       Because the rule announced by *Cunningham* is "new" within the meaning of *Teague* and

13 does not fall into one of *Teague's* exceptions, federal habeas relief is barred in this case.

14           **(ii)  The California Courts Did Not Unreasonably Apply Supreme**
                     **Court Precedent In Denying Parra's Claim**

15

16       When a state court denies a claim on the merits, federal habeas corpus relief is barred

17 unless the state-court adjudication was either (1) "contrary to, or involved an unreasonable

18 application of, clearly established Federal law, as determined by the Supreme Court of the United

19 States," or was (2) "based on an unreasonable determination of the facts in light of the evidence

20 presented in the State court proceeding." 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-

21 39, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003). This is a "'highly deferential standard for evaluating

22 state-court rulings,' which demands that state-court decisions be given the benefit of the doubt."

23 *Woodford*, 537 U.S. at 24 (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n.7), internal citation

24 omitted.

25       The California courts' conclusion that California's upper term procedure was

26 constitutional was not an unreasonable application of Supreme Court precedent. 28 U.S.C.

27 § 2254(d). As noted above, the outcome in *Cunningham* was not a foregone conclusion. Rather,

28 several courts agreed with the California Supreme Court in finding that an upper term sentencing

1    scheme like that in California was constitutional. Indeed, three justices of the Supreme Court

2    ultimately concluded that California's sentencing scheme was constitutional. *Cunningham*, 127 S.

3    Ct. at 873 (Alito, J., dissenting). *Apprendi*, *Blakely*, and *Booker*, clearly established that a

4    defendant's right to jury trial prohibited imposing a sentence above an initial sentencing range based

5    on facts not found by the jury. But they did not clearly establish that California's upper term

6    sentencing system, which required that a sentencing choice within an initial range be reasonable,

7    necessarily violated those tenets. Therefore, the California courts' rejection of Parra's claim was not

8    an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

9         In addition, the state court's decision to uphold Parra's upper term sentence was reasonable

10   because the sentence was based, in part, on Parra's prior convictions. While the Supreme Court said

11   in *Cunningham* that imposition of the upper term based on an aggravating factor not found by the

12   jury violates the Sixth Amendment, the Court retained an important exception -- a defendant's prior

13   convictions. *Cunningham*, 127 S. Ct. at 860, 864, 868. The Court continued to recognize in

14   *Cunningham*, as it did in prior cases, that selection of a sentence based on a defendant's prior

15   convictions does not violate the Sixth Amendment. *Id.*; *accord Blakely*, 542 U.S. at 301; *Apprendi*,

16   530 U.S. at 490; *Almendarez-Torres*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).

17        Furthermore, under California law, a single aggravating factor is sufficient to render a

18   defendant *eligible* for the upper term. *People v. Osband*, 13 Cal. 4th 622, 728 (1996); *see also*

19   *Black*, 35 Cal. 4th at 1255 (Cal. Penal Code § 1170(b) mandates "that the middle term be imposed

20   unless an aggravating factor is found"). Hence, a trial court's finding of a single aggravating factor

21   circumstance based on the defendant's criminal history falls within the recidivism exception to the

22   jury-trial requirement and is sufficient to authorize the imposition of an upper term sentence under

23   the Sixth Amendment. *See Cunningham*, 127 S. Ct. at 865-66 (the constitutional test focuses on the

24   judge's "authority" to impose an enhanced sentence). The California Supreme Court again re-stated

25   this principle when it considered the *Black* case in light of *Cunningham*, and held that a single

26   aggravated fact based on a prior conviction justifies an upper prison term. *People v. Black (Black*

27   *II)* 41 Cal.4th at 812-20.

28        Here, it was reasonable for the state court to determine that Parra's constitutional right to

08CV0472 J (LSP)

a jury trial was not violated based upon the recidivist facts of his prior increasing and serious convictions. Under these circumstances, the court had the authority to impose the upper term. Thus, the trial court's additional aggravating circumstance findings also did not violate *Cunningham*. Because Parra's upper term sentence was based in part on his recidivism, it was reasonable to reject Parra's jury trial claim. For similar reasons, granting relief would impermissibly create a "new rule" because reasonable jurists could reject Parra's claim on the ground that the trial court based the sentence on Parra's recidivism. *See Caspari*, 510 U.S. at 395.

### (iii) Any Error Was Harmless

In addition to the above, Parra has failed to show the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. *See Fry v. Pliler*,___ U.S.___, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (even if state court does not have occasion to apply the test for assessing prejudice applicable under federal law, the *Brecht* standard applies uniformly in all federal habeas corpus cases under section 2254); *Brecht v. Abramhamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). The Supreme Court has also specifically held that a *Blakely*-type error in failing to submit an aggravating circumstance to a jury is subject to harmless error analysis. *Washington*, 126 S. Ct. at 2553.

As noted above, a single aggravating factor was sufficient to authorize the upper term in this case. *Osband*, 13 Cal.4th at 728. Therefore, any error was harmless if the jury would have found at least one of the aggravating circumstances true beyond a reasonable doubt.

Here, any error was harmless since the trial court's reasons for imposing the upper term were observations drawn from largely uncontested or overwhelming evidence. The trial court determined the aggravating circumstances included that the crime involved great violence and also threats of great bodily harm. (5 RT 404.) Additionally, there was no dispute that Parra had a lengthy criminal history, as he committed this battery against a correctional officer and the term was ordered consecutive to the 18-years-to-life prison term he was already serving at the time. Thus, the jury would surely have found these aggravating factors true as well if they had been asked to render a verdict on either. The upper term therefore would have been authorized based on any of these factors. In any event, given the lack of any mitigating factors and Parra's criminal history, the trial

08CV0472 J (LSP)

court surely would have imposed the upper term even if it had not considered that the crime involved great violence and great bodily harm.   Therefore, any error was harmless. *Brecht*, 507 U.S. at 637-38.

1

**CONCLUSION**

2    For the foregoing reasons, Respondent respectfully requests that this Court deny the

3 Petition for Writ of Habeas Corpus with prejudice, deny all other relief, and deny any request for a

4 certificate of appealability.

5    Dated:  April 28, 2008

6                          Respectfully submitted,

7    EDMUND G. BROWN JR.
     Attorney General of the State of California

8    DANE R. GILLETTE
     Chief Assistant Attorney General

9    GARY W. SCHONS
     Senior Assistant Attorney General

10   KEVIN VIENNA
11   Supervising Deputy Attorney General

12

13                       s/BRADLEY A. WEINREB
                         Deputy Attorney General
14
                         Attorneys for Respondent
15

BAW:ah
16  80232293.wpd
    SD2008800671
17

18

19

20

21

22

23

24

25

26

27

28

08CV0472 J (LSP)

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:   **Parra v. Tilton**
No.:   **08CV0472 J (LSP)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On April 28, 2008, I served the following documents:
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**
by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Victor Parra, Jr.
P-58682
Richard J. Donovan Correctional Facility
P.O. Box 799002
San Diego, CA 92179-9002

## Electronic Mail Notice List

I have caused the above-mentioned document(s) to be electronically served on the following person(s), who are currently on the list to receive e-mail notices for this case: NONE.

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing): Victor Parra at the above-named address.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 28, 2008, at San Diego, California.

| Anna Herrera | | | Signature |
| --- | --- | --- | --- |
| Declarant | | | |

SD2008800671
80232591.wpd