1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GARY W. SCHONS
Senior Assistant Attorney General
4 | BARRY CARLTON
Supervising Deputy Attorney General
5 | BRADLEY A. WEINREB, State Bar No. 157316
Deputy Attorney General
6 | 110 West A Street, Suite 1100
San Diego, CA 92101
7 | P.O. Box 85266
San Diego, CA 92186-5266
8 | Telephone: (619) 645-2290
Fax: (619) 645-2271
9 | Email: Bradley.Weinreb@doj.ca.gov

10 | Attorneys for Respondent

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13 |

14 | **VICTOR PARRA,**

15 | Petitioner,

16 | v.

17 | **JAMES TILTON, Warden, et al.,**

18 | Respondents.

08CV0472 J (LSP)

**AMENDED ANSWER
PURSUANT TO ORDER OF
THE COURT WITH
MEMORANDUM OF POINTS
AND AUTHORITIES**

19 |
20 |

21 | **INTRODUCTION**

22 | In his sole claim for relief, Parra contends that under Cunningham v. California, __ U.S.

23 | __, 127 S. Ct. 856,  166 L. Ed. 2d 856 (2007), he was denied his constitutional right to have a jury

24 | determine beyond a reasonable doubt all of the facts legally essential to his sentence because the state

25 | trial court imposed the upper term for his battery conviction.  (Petition at 7-8.)  In the Answer,

26 | Respondent maintained the Petition should be stayed so Parra could return to state court to present

27 | his claim again in light of Cunningham.  Respondent alternatively maintained that if a stay were not

28 | appropriate, that the claim should be denied because Cunningham created a new rule under Teague

1  that cannot be retroactively applied, and that in any event, any error was harmless because under the

2  AEDPA the state courts reasonably rejected the claim.

3          On June 12, 2008, the Court ordered an amended answer to address whether a stay in this

4  case is necessary or appropriate in light of Butler v. Curry, __ F.3d. __, No. 07-56204 (9th Cir., June

5  9, 2008), 2008 WL 2331440.[1] As the following demonstrates, a stay is not necessary or appropriate,

6  and, the petition should be dismissed.

7      **A.    A Stay is Not Necessary or Appropriate in light of Butler v. Curry**

8          On June 9th, the Ninth Circuit held the Cunningham decision was "clearly dictated" by

9  prior United States Supreme Court decisions, such as Apprendi v. New Jersey, 530 U.S. 466, 120

10  S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159

11  L.Ed.2d 403 (2004). Butler v. Curry, 528 F.3d at 634-35. Instead, Cunningham "simply applied"

12  the rule of Blakely to California's sentencing scheme. Id. at 636. As a result, it did not announce

13  a new rule of constitutional law and may be retroactively applied. Id. at 639. And because

14  Cunningham did not announce a "new rule," the Ninth Circuit also determined that a petitioner need

15  not return to state court in order to exhaust this claim. Ibid.

16          In light of Butler, there is no need to stay the proceedings.

17      **B.    The State Court Reasonably Rejected Parra's Claim, And In Any Event, Any**
       **Assumed Error Was Harmless Under AEDPA**

18

19          Assuming the Court determines a stay is not necessary or appropriate, the petition must

20  still be dismissed because under AEDPA, the state court reasonably determined that an aggravated

21  upper term sentence was proper. Further, any assumed error was harmless.[2]

22  _____

23      1.  A copy of the Butler decision is attached.

24      2.  The Court requested the amended answer also address arguments pertaining to the tolling
    of the statute of limitations and on the merits of the petition. As to the statute of limitations,
25  respondent observes that on November 14, 2006, Parra filed a state petition for review claiming that
    under he was entitled to a jury trial before the aggravated prison term could be imposed, relying on
26  Blakely.(Lodgment 3.) On December 20, 2006, the California Supreme Court denied review without
    prejudice to any relief Parra might be entitled to after determination of the-then pending case of
27  Cunningham. (Lodgment Nos. 4 and 5.) That decision was final ninety-days later, or March 20,
28  2007. Consequently, Parra had until March 20, 2008, to file the instant petition. Parra timely filed

08CV0472 J (LSP)

1

2

### 1.    Standard Of Review

Federal habeas lies only to correct violations of the United States Constitution, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d); Estelle v. McGuire, 502 U.S. 62, 68, 1125 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Because Parra filed his Petition after April 24, 1996, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[3/]. Lindh v. Murphy, 521 U.S. 320, 336-38, 117 S. Ct. 2059, 2068, 138 L. Ed. 2d 481 (1997).   The enactment of AEDPA was intended to prevent federal habeas "retrials" and ensure that state court convictions are "given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed. 2d 914 (2002).

Parra may not receive relief unless the state-court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were based on "an unreasonable determination" of the state court evidence. 28 U.S.C. § 2254(d).  This "'highly deferential standard'" demands that federal courts give state court decisions "the benefit of the doubt."  Woodford v. Visciotti, 537 U.S. 19, 24, 123 S. Ct. 357, 360, 154 L. Ed. 2d 279 (2002), quoting Lindh, 521 U.S. at 333, n.7; Williams v. Taylor, 529 U.S. 362, 404-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

In determining what constitutes federal law for purposes of the deference standard, only United States Supreme Court decisions, not circuit court authority, are controlling.  Id. at 412. Moreover, a federal court may reverse only if the state decision is contrary to the holdings (as

---

the instant petition on March 13, 2008.

3. 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or;
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

08CV0472 J (LSP)

1   opposed to dicta) of the United States Supreme Court. <u>Tyler v. Cain</u>, 533 U.S. 656, 121 S. Ct. 2478,

2   150 L. Ed. 2d 632 (2001), <u>citing Williams</u>, 529 U.S. at 412.

3       AEDPA also addresses state court factual findings in section 2254(e)(1), which provides

4   that such findings "shall be presumed to be correct" and places on the petitioner "the burden of

5   rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

6   The presumption of correctness applies not only to express findings of fact, but also applies equally

7   to unarticulated findings that are necessary to the state court's conclusions of mixed questions of fact

8   and law. <u>See, e.g., Marshall v. Longberger</u>, 459 U.S. 422, 433, 103 S. Ct. 843, 74 L. Ed. 2d 646

9   (1983) (application of presumption to credibility determination which was implicit in rejection of

10  defendant's claim); <u>Bell v. Jarvis</u>, 236 F.3d 149, 158-60 (4th Cir. 2000) (de novo, independent, or

11  plenary review of state court adjudications is no longer appropriate).

12      Where there is no reasoned decision from the state's highest court, the Court "looks

13  through" to the underlying court decision. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801-06, 111 S. Ct.

14  2590, 115 L. Ed. 2d 706 (1991). If the dispositive state court order does not "furnish a basis for its

15  reasoning," federal habeas courts must conduct an independent review of the record to determine

16  whether the state court's decision is contrary to, or an unreasonable application of, clearly established

17  Supreme Court law. <u>See Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000), <u>overruled on other</u>

18  <u>grounds by Lockyer v. Andrade</u>, 538 U.S. 63, 75-6, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003);

19  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite

20  Supreme Court precedent when resolving a habeas corpus claim. <u>Early v. Packer</u>, 537 U.S. 3, 8, 123

21  S. Ct. 362, 154 L. Ed. 2d 263 (2002). "[S]o long as neither the reasoning nor the result of the state-

22  court decision contradicts [Supreme Court precedent,]" <u>id.</u>, the state court decision will not be

23  "contrary to" clearly established federal law.

24      **2.   Analysis**

25      Under the AEDPA standard, the state court's decision to uphold Parra's upper term

26  sentence was reasonable because the sentence was based, in part, on Parra's prior convictions. While

27  the Supreme Court said in <u>Cunningham</u> that imposition of the upper term based on an aggravating

28  factor not found by the jury violates the Sixth Amendment, the Court retained an important

4

1   exception -- a defendant's prior convictions. Cunningham, 127 S. Ct. at 860, 864, 868. The Court

2   continued to recognize in Cunningham, as it did in prior cases, that selection of a sentence based on

3   a defendant's prior convictions does not violate the Sixth Amendment. Id.; accord Blakely, 542 U.S.

4   at 301; Apprendi, 530 U.S. at 490; Almendarez-Torres, 523 U.S. 224.

5       Furthermore, under California law, a single aggravating factor is sufficient to render a

6   defendant *eligible* for the upper term. People v. Osband, 13 Cal. 4th 622, 728 (1996); see also Black,

7   35 Cal. 4th at 1255 (Cal. Penal Code § 1170(b) mandates "that the middle term be imposed unless

8   an aggravating factor is found"). Hence, a trial court's finding of a single aggravating factor

9   circumstance based on the defendant's criminal history falls within the recidivism exception to the

10  jury-trial requirement and is sufficient to authorize the imposition of an upper term sentence under

11  the Sixth Amendment. See Cunningham, 127 S. Ct. at 865-66 (the constitutional test focuses on the

12  judge's "authority" to impose an enhanced sentence). The California Supreme Court again re-stated

13  this principle when it considered the Black case in light of Cunningham, and held that a single

14  aggravated fact based on  a prior conviction justifies an upper prison term. People v. Black 41

15  Cal.4th 799, 812-20 (2007) ("Black II").

16      Thus, once a single aggravating circumstance is established in accordance with Blakely's

17  constitutional requirements, the defendant is no longer legally entitled to the middle term, rather, the

18  upper term becomes the statutory maximum. A trial judge is then free to consider other aggravating

19  factors without submitting them to a jury, Black II, 41 Cal. 4th at 813-16. Federal courts are bound

20  by this interpretation of California state law. Butler v. Curry, 528 F.3d at 642-43.

21      Here, it was reasonable for the state court to determine that Parra's constitutional right to

22  a jury trial was not violated based upon the recidivist fact of his prior conviction. Indeed, whether

23  Parra had a prior conviction was an obvious conclusion given that the jury found he was a prison

24  inmate at the time of the offense.[4] (4 RT 322.) The trial court also specifically referenced the

25

26  _____

    4.  Whether Parra had prior convictions was initially an enhancement allegation presented

27  to the jury. However, the documents presented by the People were not properly authenticated and
    found inadmissible by the trial court. As a result, the jury was not asked to find whether Parra

28  suffered prior convictions as an enhancement to his convicted offense. (4 RT 323-29.)

08CV0472 J (LSP)

1  existence of two prior serious and violent felony convictions at the time of sentencing.[5/] (5 RT 404.)

2  Under these circumstances, the court had the authority to impose the upper term. Thus, the trial

3  court's additional aggravating circumstance findings also did not violate Cunningham. Because

4  Parra's upper term sentence was based in part on his recidivism, it was reasonable to reject Parra's

5  jury trial claim.

6       Alternatively, even if error occurred, Parra has failed to show the alleged error had a

7  substantial and injurious effect or influence in determining the jury's verdict. See Fry v. Pliler, __

8  U.S.___, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (even if state court does not have occasion to

9  apply the test for assessing prejudice applicable under federal law, the Brecht standard applies

10 uniformly in all federal habeas corpus cases under section 2254); Brecht v. Abrahamson, 507 U.S.

11 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). The Supreme Court has also specifically

12 held that a Blakely-type error in failing to submit an aggravating circumstance to a jury is subject to

13 harmless error analysis. Washington, 126 S. Ct. at 2553.

14      As noted above, a single aggravating factor is sufficient to authorize an aggravated upper

15 term. Osband, 13 Cal. 4th at 728; Sandoval, 41 Cal.4th at 835-37; Black II, 41 Cal.4th at 812-20.

16 Therefore, any error was harmless if the jury would have found at least one of the aggravating

17 circumstances true beyond a reasonable doubt.

18      Here, any error was harmless since the trial court's reasons for imposing the upper term

19 were observations drawn from largely uncontested or overwhelming evidence. The trial court

20 determined the aggravating circumstances included that the crime involved great violence and threats

21 of great bodily harm, as well as the existence of two prior serious and violent felony convictions.

22

---

23   5.  Respondent observes that in Butler, the Ninth Circuit, on de novo review, held that the prior conviction exception is narrow, encompassing only those facts which can be established by "the prior judicial record" of conviction. Butler, 528 F.3d at 644-48. There, the Ninth Circuit thus concluded that the defendant's current probationary status thus did not fall within the exception. Id. at 647-48. Although the limiting distinction is irrelevant in this case, Respondent does observe that several federal courts have construed the exception broadly, concluding that it encompasses findings related to the defendant's recidivism. United States v. Smith, 474 F.3d 888, 892 (6th Cir. 2007); United States v. Corchado, 427 F.3d 815, 820 (10th Cir. 2005); United States v. Fagans, 406 F.3d 138, 142 (2nd Cir. 2005); United States v. Kempis-Bonola, 287 F.3d 699, 703 (8th Cir. 2002); United States v. Santiago, 268 F.3d 151, 156 (2nd Cir. 2001).

24

25

26

27

28

1   (5 RT 404.)  Additionally, there was no dispute that Parra had a lengthy criminal history, as he was

2   convicted of committing this battery while in prison and against a correctional officer.   (CT 134-

3   135, 137.)  Moreover, the term was ordered consecutive to the 18-years-to-life prison term he was

4   already serving at the time.  (CT 152-153.)    Thus, the jury would surely have found these

5   aggravating factors true as well if they had been asked to render a verdict on either.  The upper term

6   therefore would have been authorized based on any of these factors.  In any event, given the lack of

7   any mitigating factors and Parra's criminal history, the trial court surely would have imposed the

8   upper term even if it had not considered that the crime involved great violence and great bodily

9   harm.   Therefore, any error was harmless.  Brecht, 507 U.S. at 637-38.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08CV0472 J (LSP)

1

## CONCLUSION

2       For the foregoing reasons, respondent respectfully requests that this Court deny the Petition

3 for Writ of Habeas Corpus with prejudice, deny all other relief, and deny any request for a certificate

4 of appealability.

5

6       Dated:  July 9, 2008

7                   Respectfully submitted,

8                   EDMUND G. BROWN JR.
                        Attorney General of the State of California

9                   DANE R. GILLETTE
                        Chief Assistant Attorney General

10

11                 GARY W. SCHONS
                        Senior Assistant Attorney General

12                 KEVIN VIENNA
                        Supervising Deputy Attorney General

13

14

15                 s/BRADLEY A. WEINREB
                        Deputy Attorney General

16                 Attorneys for Respondent

17 BAW:ah

18 80257523.wpd
   SD2008800671

19

20

21

22

23

24

25

26

27

28

08CV0472 J (LSP)

# ATTACHMENT INDEX

<u>Butler v. Curry</u> Opinion

ATTACHMENT

Westlaw.

528 F.3d 624                                                                                                          Page 1
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

▷Butler v. Curry
C.A.9 (Cal.),2008.

United States Court of Appeals,Ninth Circuit.
Frank BUTLER, Petitioner-Appellee,
v.
Ben CURRY, Respondent-Appellant.
No. 07-56204.

Argued and Submitted Feb. 4, 2008.
Filed June 9, 2008.

**Background:** Following affirmance of California
conviction for corporal injury to spouse, 2005 WL
2374727, petition for writ of habeas corpus was filed. The
United States District Court for the Central District of
California, James V. Selna, J., granted the writ. The State
appealed.

**Holdings:** The Court of Appeals, Berzon, Circuit Judge,
held that:
(1) Supreme Court's *Cunningham* decision did not
announce a new rule of constitutional law under *Teague*
nonretroactivity rule;
(2) state court decision upholding California's determinate
sentencing law (DSL) was contrary to clearly established
law of the Supreme Court;
(3)*Almendarez-Torres* prior conviction exception did not
extend to petitioner's probationary status at time of instant
crime;
(4) state court's *Apprendi* error was not harmless; and
(5) petitioner was entitled to evidentiary hearing to
determine whether state court's error in raising maximum
term of punishment based on his probationary status was
harmless.

Affirmed in part, vacated in part, and remanded.

West Headnotes

**[1] Habeas Corpus 197 ☞461**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for
Detention in General
        197k461 k. Grounds in General. Most Cited
Cases
When a State raises the issue of retroactivity, federal
habeas courts must apply *Teague* before considering the
merits of a claim.

**[2] Courts 106 ☞100(1)**

106 Courts
    106II Establishment, Organization, and Procedure
      106II(H) Effect of Reversal or Overruling
        106k100 In General
          106k100(1) k. In General; Retroactive or
Prospective Operation. Most Cited Cases
Under *Teague*, old rules of criminal procedure apply both
on direct and collateral review, but a new rule is generally
applicable only to cases that are still on direct review.

**[3] Courts 106 ☞100(1)**

106 Courts
    106II Establishment, Organization, and Procedure
      106II(H) Effect of Reversal or Overruling

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Page 2

106k100 In General
106k100(1) k. In General; Retroactive or
Prospective Operation. Most Cited Cases
A new criminal procedure rule may be applied on
collateral review if it places certain primary conduct
beyond the reach of the criminal law, or constitutes a
watershed rule of criminal procedure implicating the
fundamental fairness and accuracy of the criminal
proceeding.


**[4] Habeas Corpus 197 ☞461**


197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for
Detention in General
       197k461 k. Grounds in General. Most Cited
Cases
*Teague* rule barring retroactive application of new rules
of constitutional criminal procedure in habeas proceedings
does not require a habeas petitioner to show that the
Supreme Court has decided a case involving identical
facts, circumstances, and legal issues.


**[5] Habeas Corpus 197 ☞461**


197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for
Detention in General
       197k461 k. Grounds in General. Most Cited
Cases
Under *Teague* rule barring retroactive application of new
rules of constitutional criminal procedure in habeas
proceedings, when a general rule must be applied in a new
situation, it can hardly be thought to have created a new
principle of constitutional law.

**[6] Courts 106 ☞100(1)**


106 Courts
   106II Establishment, Organization, and Procedure
     106II(H) Effect of Reversal or Overruling
       106k100 In General
          106k100(1) k. In General; Retroactive or
Prospective Operation. Most Cited Cases
In determining whether a rule of constitutional criminal
procedure is new for *Teague* purposes, the Court of
Appeals may consider its own case law.


**[7] Courts 106 ☞100(1)**


106 Courts
   106II Establishment, Organization, and Procedure
     106II(H) Effect of Reversal or Overruling
       106k100 In General
          106k100(1) k. In General; Retroactive or
Prospective Operation. Most Cited Cases
Supreme Court's *Cunningham* decision, which held that
California's determinate sentencing law (DSL) violated
the Sixth Amendment, did not announce a new rule of
constitutional law under *Teague* nonretroactivity rule, and
therefore *Cunningham* could be applied retroactively;
prior to *Cunningham*, Supreme Court's case law firmly
established that a sentencing scheme in which maximum
possible sentence was set based on facts found by judge
was not consistent with the Sixth Amendment. U.S.C.A.
Const.Amend. 6.


**[8] Courts 106 ☞100(1)**


106 Courts
   106II Establishment, Organization, and Procedure
     106II(H) Effect of Reversal or Overruling
       106k100 In General

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                          Page 3
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

106k100(1) k. In General; Retroactive or Prospective Operation. Most Cited Cases
Dissents to the decision announcing a rule of criminal procedure are relevant to the new rule analysis under the *Teague* retroactivity rule, but their existence does not alone suffice to show that the rule is new.

**[9] Habeas Corpus 197 ☞379**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k379 k. Rights and Remedies Lately Available. Most Cited Cases
When a habeas petitioner raises a claim in state court that is later resolved in a Supreme Court case that announced no new rule of criminal procedure under the *Teague* retroactivity analysis, a petitioner is not obligated to return to state court to exhaust his remedies under that case.

**[10] Habeas Corpus 197 ☞452**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(A) Ground and Nature of Restraint
            197k450 Federal Review of State or Territorial Cases
                197k452 k. Federal or Constitutional Questions. Most Cited Cases
Supreme Court precedents that qualify as an old rule under *Teague* retroactivity analysis constitute clearly established Federal law within the meaning of the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C.A. § 2254(d)(1).

**[11] Habeas Corpus 197 ☞452**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(A) Ground and Nature of Restraint
            197k450 Federal Review of State or Territorial Cases
                197k452 k. Federal or Constitutional Questions. Most Cited Cases
A state court decision is "contrary to clearly established federal law" under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the state court either applies a rule that contradicts the governing law set forth by the Supreme Court or arrives at a different result when confronted by a set of facts that are materially indistinguishable from a decision of the Supreme Court. 28 U.S.C.A. § 2254(d)(1).

**[12] Habeas Corpus 197 ☞450.1**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(A) Ground and Nature of Restraint
            197k450 Federal Review of State or Territorial Cases
                197k450.1 k. In General. Most Cited Cases
An "unreasonable application of federal law" under the Antiterrorism and Effective Death Penalty Act (AEDPA) results when a state court applies Supreme Court precedents to the facts in an objectively unreasonable manner, or unreasonably fails to extend the holding or legal principles of a Supreme Court decision to a situation in which it should have controlled. 28 U.S.C.A. § 2254(d)(1).

**[13] Habeas Corpus 197 ☞765.1**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                          Page 4
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)4 Conclusiveness of Prior
Determinations
            197k765 State Determinations in Federal
Court
            197k765.1 k. In General. *Most Cited
Cases*
In reviewing a state court decision under the Antiterrorism
and Effective Death Penalty Act (AEDPA), the Court of
Appeals looks to the last reasoned decision of the state
court as the basis of the state court's judgment. 28
U.S.C.A. § 2254(d)(1).


**[14] Habeas Corpus 197 ☞505**


   197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
        197k503 Judgment, Sentence, or Order
           197k505 k. Procedural Errors. *Most Cited
Cases*
State court decision upholding California's determinate
sentencing law by finding that it involved factfinding
traditionally performed by a judge was contrary to clearly
established law of the Supreme Court, as required for
habeas relief; instead of applying *Apprendi* rule that
maximum sentence was what judge could impose solely
on basis of facts reflected in jury verdict or admitted by
defendant, court applied traditional judicial factfinding
rule which was inconsistent with Supreme Court
precedent.


**[15] Habeas Corpus 197 ☞842**


   197 Habeas Corpus

    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
           197III(D)2 Scope and Standards of Review
            197k842 k. Review De Novo. *Most Cited
Cases*


**Habeas Corpus 197 ☞845**


197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
           197III(D)2 Scope and Standards of Review
            197k845 k. Questions of Law and Fact.
*Most Cited Cases*
Having held that the requirements of the Antiterrorism
and Effective Death Penalty Act (AEDPA) have been
met, the Court of Appeals must also determine, applying
a de novo review standard, whether there has been a
constitutional violation. 28 U.S.C.A. §§ 2254(d)(1),
2241(c)(3).


**[16] Habeas Corpus 197 ☞816**


   197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
           197III(D)1 In General
            197k816 k. Presentation and Reservation in
Lower Habeas Court of Grounds of Review. *Most Cited
Cases*
On State's appeal from grant of writ of habeas corpus to
which petitioner filed traverse, petitioner waived
argument that Court of Appeals should not accept state
court's interpretation of the California determinate
sentencing law as requiring only a single aggravating
factor to authorize the upper term, where petitioner failed
to raise argument either in the district court or in his brief
on appeal, mentioning it for the first time at oral

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                   Page 5
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

argument.

**[17] Habeas Corpus 197 ☜765.1**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)4 Conclusiveness of Prior Determinations
            197k765 State Determinations in Federal Court
            197k765.1 k. In General. Most Cited Cases
On habeas review, the Court of Appeals is bound to accept a state court's interpretation of state law, except in the highly unusual case in which the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a constitutional violation.

**[18] Jury 230 ☜34(6)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
        230k34 Restriction or Invasion of Functions of Jury
            230k34(5) Sentencing Matters
            230k34(6) k. In General. Most Cited Cases
The Sixth Amendment does not prevent judges from exercising discretion at sentencing-taking into consideration various factors relating both to offense and offender-in imposing a judgment within the range prescribed by statute. U.S.C.A. Const.Amend. 6.

**[19] Sentencing and Punishment 350H ☜40**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(C) Factors or Purposes in General
        350Hk40 k. In General. Most Cited Cases
In imposing a sentence, judges may implicitly rule on those facts they deem important to the exercise of their sentencing discretion.

**[20] Jury 230 ☜34(7)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
        230k34 Restriction or Invasion of Functions of Jury
            230k34(5) Sentencing Matters
            230k34(7) k. Particular Cases in General. Most Cited Cases

**Sentencing and Punishment 350H ☜322.5**

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
        350HII(F) Evidence
        350Hk322 Degree of Proof
            350Hk322.5 k. Factors Enhancing Sentence. Most Cited Cases
Prior conviction exception to rule that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt, did not extend to defendant's probationary status at time of instant crime, and thus defendant's Sixth Amendment rights were violated when maximum term of punishment was raised based on his probationary status at time of crime, which was an issue not submitted to jury; fact that defendant was on probation at moment of current crime was not reflected in documents of prior conviction and could not be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

conclusively inferred from those documents, since judge retained authority to modify terms of probation at any time. U.S.C.A. Const.Amend. 6; West's Ann.Cal.Penal Code § 1203.3(a).

**[21] Jury 230 ☞34(7)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
            230k34(5) Sentencing Matters
            230k34(7) k. Particular Cases in General.
Most Cited Cases
There are three prerequisites for applying the *Almendarez-Torres* prior conviction exception: (1) the fact of a prior conviction is the only fact that both increases a penalty beyond the statutory maximum and can be found by a sentencing court; (2) the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from a prior conviction or from the conviction documents; and (3) as the prior conviction exception is justified by the reliability of court documents created as part of a process with Sixth Amendment safeguards, it does not extend to facts that may be proven only by reference to documents that were not developed as a result of such a process. U.S.C.A. Const.Amend. 6.

**[22] Habeas Corpus 197 ☞503.1**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k503 Judgment, Sentence, or Order

197k503.1 k. In General. Most Cited Cases
Under the harmless error standard, the Court of Appeals must grant habeas relief if it is in grave doubt as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt.

**[23] Habeas Corpus 197 ☞503.1**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k503 Judgment, Sentence, or Order
                197k503.1 k. In General. Most Cited Cases
Grave doubt exists, warranting habeas relief, when, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the sentencing error.

**[24] Habeas Corpus 197 ☞496**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k496 k. Jury. Most Cited Cases

**Habeas Corpus 197 ☞505**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k503 Judgment, Sentence, or Order
                197k505 k. Procedural Errors. Most Cited Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Page 7

In conducting harmless error review of an *Apprendi* violation on petition for habeas corpus, the Court of Appeals may consider evidence presented at sentencing proceedings, but it does not consider new admissions made at sentencing in the harmless error inquiry.

**[25] Habeas Corpus 197 ⬅496**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
       197k496 k. Jury. Most Cited Cases

**Habeas Corpus 197 ⬅505**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
       197k503 Judgment, Sentence, or Order
         197k505 k. Procedural Errors. Most Cited Cases
State court's *Apprendi* error in raising maximum term of punishment based on its finding that domestic violence victim was particularly vulnerable because she was attacked from behind was not harmless, warranting habeas relief; jury could have found otherwise. West's Ann.Cal.Penal Code § 273.5.

**[26] Sentencing and Punishment 350H ⬅121**

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(F) Factors Related to Status of Victim
       350Hk121 k. Vulnerability. Most Cited Cases

Under California law, "vulnerable," for sentencing purposes, means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act.

**[27] Sentencing and Punishment 350H ⬅121**

350H Sentencing and Punishment
   350HI Punishment in General
     350HI(F) Factors Related to Status of Victim
       350Hk121 k. Vulnerability. Most Cited Cases
Under California law, a victim is "particularly vulnerable" for sentencing purposes only if he is vulnerable to a special or unusual degree, to an extent greater than in other cases; a victim is thus not particularly vulnerable where all victims of the crime of conviction are vulnerable in the same manner.

**[28] Habeas Corpus 197 ⬅751**

197 Habeas Corpus
   197III Jurisdiction, Proceedings, and Relief
     197III(C) Proceedings
       197III(C)3 Hearing
         197k745 Criminal Cases
           197k751 k. Sentence and Punishment. Most Cited Cases
Habeas petitioner was entitled to evidentiary hearing to determine whether state court's error in raising maximum term of punishment based on petitioner's probationary status at time of crime, which was an issue that was not submitted to the jury, was harmless; probation report read by sentencing judge was not submitted to district court. U.S.C.A. Const.Amend. 6.

**\*628**Davina T. Chen, Deputy Federal Public Defender, Los Angeles, CA, for the petitioner.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

William H. Shin, Deputy Attorney General, Los Angeles, CA, for the respondent.

Appeal from the United States District Court for the Central District of California; Honorable James V. Selna, District Judge, Presiding. D.C. No. CV-06-07576-JVS(RNB).

Before: CYNTHIA HOLCOMB HALL, SUSAN P. GRABER, MARSHA S. BERZON, Circuit Judges.

BERZON, Circuit Judge:

Frank Butler alleged in his petition for writ of habeas corpus that his Sixth Amendment rights were violated when the California state trial court imposed an "upper term" sentence based on two aggravating factors not proved to a jury beyond a reasonable doubt. The district court, relying on *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), agreed, and granted the writ. The State contends that *Cunningham*, which struck down California's determinate sentencing law ("DSL"), announced a "new rule" that cannot be applied on collateral review. In the alternative, the State maintains that the requirements for habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") have not been met, and that, even if they were, there was no constitutional violation.

We conclude that the result in *Cunningham* was clearly dictated by the Supreme Court's Sixth Amendment case law, in particular by *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), decided before Butler's conviction became final. The state court decision in Butler's case was contrary to this clearly established law. Further, Butler's constitutional rights were violated when the statutory maximum for his crime was increased*629 on the basis of facts found by a judge by a preponderance of the evidence, rather than admitted or

found by a jury beyond a reasonable doubt. We cannot, however, determine whether this violation was harmless in the absence of further factfinding about what evidence was presented to the state trial court judge in support of the allegation that Butler was on probation at the time of his crime. For that reason, we remand to the district court for an evidentiary hearing.

## I. Background.

### A. Trial.

Frank Butler was tried in California state court for an assault on his former wife, Daria Butler. At trial, the Butlers provided conflicting accounts of the assault. The judge's finding with regard to one of the aggravating factors turned, to some degree, on whose story was believed.

### 1. Daria testified:

She and Butler married in 1989 and had two children together, Barbara and Laquan, prior to their divorce in 1993. Her fights with Butler had been physical in the past, and she had hit him on more than one occasion. Daria had obtained at least three restraining orders against Butler, and she and Butler had repeatedly ended their relationship. In the summer of 2000, they reconciled once again, and Daria drove to St. Louis to pick up Butler and bring him back to California. Several months after Butler's return to California, Daria and Butler separated once more, and Daria obtained a restraining order against Butler, still in place at the time of the June 28, 2001 incident. The Butlers reconciled yet again in January or February of 2001 and were living together, with their two children, at the time of the assault.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                            Page 9
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

In 1977, Daria was in an abusive relationship with a different boyfriend. She obtained a gun and asked her boyfriend to meet her in an alley, where she shot and seriously injured him. At that time, she "didn't have any knowledge of shelters or restraining orders or anything."

On the evening of June 28, 2001, Daria and Butler had a dispute about a letter she had received from another ex-husband asking for help. Butler left the room; Daria "could tell that he was kind of getting upset." Later in the evening, Daria tried to talk with Butler in their bedroom, but he left the room, slamming the door behind him. Daria decided to sleep in the downstairs office, but soon after she had gotten into bed downstairs, Butler entered the office and began yelling at her about her ex-husband. He then turned and left the room.

Soon thereafter, Daria decided to return to the bedroom, and Butler followed her there, "cursing and screaming" at her. Daria retrieved Butler's suitcase from the bedroom closet; as she turned and placed it on the bed, she felt a blow to the back of her head and "the blows kept coming." At some point during the attack, Daria realized that she was being hit with an iron. The attack left "blood spattered all across the room for several feet on the walls, the door," and the fan.

Daria began screaming for her children. Laquan testified that when he responded to his mother's screams, he found his mother on the floor of the bedroom crying and "bleeding in the back of her head." The police arrived shortly thereafter, and Daria was taken to the hospital, where she received six to eight staples in the back of her head. Deputy Calvo, the sheriff's deputy assigned to investigate the case, confirmed that when he arrived at the scene he found a shattered iron.

**2.** Butler testified:

\*630 Daria was the one who had instigated physical confrontations in their relationship, attacking and slapping him during marriage counseling sessions, and throwing things at him during arguments. At one point several months before the incident in question, Daria bit him on the chest after an argument.

After Daria told him about the letter from her ex-husband, he responded that she should tell her ex-husband that she could not help him because she was with Butler now. Daria became visibly angry. Butler attempted several times throughout the evening to speak with her, but she refused to have a conversation with him. After his final attempt to speak with her in the downstairs office, he concluded that it was better if he simply left, so he went upstairs to pack. Daria followed him upstairs to the bedroom, and he saw that she had a knife in her left hand. She came at him with the knife, and he grabbed the iron from his closet and hit her with it until she dropped the knife. Laquan, Barbara, and Deputy Calvo all testified that they did not see a knife in the bedroom after the attack.

**3.** The jury found Butler guilty of corporal injury to a spouse (Cal.Penal Code § 273.5(a) (2001)) [FN1] and assault with a deadly weapon or by means of force likely to produce great bodily injury (Cal.Penal Code § 245(a)(1) (2000)).[FN2] The jury also found as "enhancements" that Butler used a deadly and dangerous weapon and that he inflicted great bodily injury during the commission of the crime.  *See* Cal.Penal Code §§ 12022(b)(1) (2003),[FN3] 12022.7(a) (2003).[FN4]

        FN1. Cal.Penal Code § 273.5(a) provides:

            Any person who willfully inflicts upon a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

009

528 F.3d 624                                                                    Page 10
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

person who is his or her spouse, former spouse, cohabitant, former cohabitant, the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both that fine and imprisonment.

FN2.Cal.Penal Code § 245(a)(1) provides:

Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

FN3.Cal.Penal Code § 12022(b)(1) provides:

Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense.

FN4.Cal.Penal Code § 12022.7(a) provides:

Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years.

**B. Sentencing.**

Under California's DSL as it existed at the time Butler was sentenced, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." FN5Cal.Penal Code § 1170(b) *631 (2005). The California Rules of Court ("Rules") effective at the time of Butler's sentencing FN6 also provided that "[t]he middle term must be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation." Cal. R. Ct. 4.420(a)(1977). Under the Rules, "[c]ircumstances in aggravation and mitigation must be established by a preponderance of the evidence," and "[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." Rule 4.420(b). The Rules also specify a non-exhaustive list of aggravating and mitigating factors, including factors relating to the crime and factors relating to the defendant. SeeCal. R. Ct. 4.421, 4.423. Both the crimes of which Butler was convicted specify three possible terms, so his sentencing was governed by section 1170(b). SeeCal.Penal Code §§ 273.5(a), 245(a)(1).

FN5.Section 1170 of the California Penal Code was amended in January 2005 and again in March of 2007. SeeCal.Penal Code § 1170 (2005) and Cal.Penal Code § 1170 (2007). The relevant language in section 1170(b) remained

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Page 11

unchanged in the version that was passed in January 2005. In contrast, the version that became effective on March 30, 2007, passed in response to *Cunningham,* provides that: "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." Cal.Penal Code § 1170(b) (2007). All references to section 1170(b) are to the 2005 version-which was in effect at the time Butler's conviction became final in November 2005-unless otherwise specified.

FN6.Rule 4.420 was amended substantially on May 23, 2007 in response to *Cunningham. See* Cal. R. Ct. 4.420 (2007). All references are to the previous version in effect in November 2005 when Butler's conviction became final unless otherwise specified.

At Butler's sentencing, the court indicated that it had "read and considered the probation report in this case." The court then found that although Butler had one prior misdemeanor offense, his lack of a significant prior record was a factor in mitigation. The court noted that "on the other side of the coin are factors in aggravation": "the vulnerability of the victim with her back turned to the defendant when she was attacked from behind" and "the fact that [Butler] was on probation at the time the crime was committed."

Butler's counsel objected to the use of Butler's probationary status as an aggravating factor, arguing that "there is no indication that he was noncompliant except for this." The court rejected this argument, and went on to conclude that the aggravating factors "outweigh the factor in mitigation." Based on these findings, the court imposed the upper term of four years in state prison for corporal

injury to a spouse. The court then also imposed sentences of one year and three years, respectively, for the use of a deadly weapon and the infliction of serious bodily injury enhancements, for a total of eight years in state prison. On count two, assault with a deadly weapon, the court imposed the middle term of three years as well as the three-year enhancement for causing serious bodily injury, but stayed imposition of the sentence.

**C. State Direct Appeals and Post-Conviction Relief.**

On direct appeal, Butler raised a Sixth Amendment challenge to the imposition of an upper term sentence based on facts found by a judge by a preponderance of the evidence, rather than by a jury beyond a reasonable doubt. The California Court of Appeal initially held, on September 22, 2004, that Butler's "sentence was erroneous under compulsion of *Blakely v. Washington* [, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),]" because "[t]he court imposed the high term ... based on factual findings it made without a jury."

**\*632** Shortly before the California Court of Appeal's first decision on Butler's direct appeal, the California Supreme Court had decided *People v. Black,* 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005) ("*Black I* "), in which it held that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence ... under California law does not implicate a defendant's Sixth Amendment right to a jury trial." *Id.* at 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534. The California Supreme Court granted review of the Court of Appeal's initial decision in Butler's case and remanded with directions to vacate and reconsider the appeal in light of *Black I.* On September 28, 2005, the Court of Appeals reconsidered its earlier ruling and held that Butler's sentence did not violate the Sixth Amendment. Butler did not appeal the Court of Appeal's second decision, but did file a petition for state postconviction relief in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Page 12

California Supreme Court, which was denied on the merits without comment or citation.

### D. District Court Proceedings.

In December 2006, Butler filed a petition for writ of habeas corpus in federal district court, maintaining that his sentence violated *Blakely.* Shortly thereafter, in January 2007, the Supreme Court decided *Cunningham.Cunningham* addressed a challenge to California's DSL and concluded that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum" for purposes of analysis under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). 127 S.Ct. at 868. Because "the DSL authorize[d] the judge, not the jury, to find the facts permitting an upper term sentence," it violated the Sixth Amendment. *Id.* at 871.

The State responded to Butler's petition by filing a motion to dismiss, arguing that Butler's claim of sentencing error was unexhausted. The State contended that, "because the recent *Cunningham* decision casts petitioner's [claim] in a significantly different light, his petition should be dismissed and proceedings stayed while petitioner returns to state court to seek relief under *Cunningham.*"

The magistrate judge recommended that the district court deny the state's motion because *Cunningham*"did not effect an intervening change in federal law." In its objections to the magistrate judge's recommendation, the State argued for the first time that *Cunningham* constitutes a "new rule of constitutional law" within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The district court adopted the magistrate judge's recommendation and denied the motion to dismiss, holding, *inter alia,* that the State's "*Teague* argument fails."

Having failed in its effort at dismissal, the State filed an answer to the first amended petition on May 16, 2007, in which it maintained that granting relief to petitioner would violate *Teague.*Moreover, the State argued, the California Court of Appeal and the California Supreme Court's decisions did not unreasonably apply "clearly established" Supreme Court precedent because Butler's probation status falls within the "recidivism" exception to *Apprendi v. New Jersey* and, under California's DSL, a trial court's finding of a single aggravating factor is sufficient to render a defendant eligible for the upper term. The State further contended that any error was harmless because the jury would have found the two aggravating factors beyond a reasonable doubt. Butler filed a traverse in response, contesting each of the State's arguments.

**\*633** The magistrate judge recommended that the district court grant a conditional writ of habeas corpus. The magistrate judge determined that the failure to obtain a jury verdict on the probation aggravating factor was harmless, but that the state had not met its burden of demonstrating harmlessness with regard to the "vulnerability of the victim" finding. The district court adopted the magistrate judge's recommendation and granted a conditional writ of habeas corpus.

### II. Analysis.

### A. Retroactivity.

In *Cunningham,* the Supreme Court addressed a Sixth Amendment challenge to California's DSL. The petitioner in *Cunningham* was convicted of "continuous sexual abuse of a child under the age of 14." 127 S.Ct. at 860. That crime, like the crimes of which Butler was convicted,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                     Page 13
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

was punishable under California law by a lower, middle, or upper term. *Id.* Finding several aggravating factors, the judge imposed an upper term. *Id.* Observing that, under Cal.Penal Code § 1170(b) (2005), the judge was required to impose a middle term sentence unless he found one or more aggravating factors, the Court held:

In accord with *Blakely,*... the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, the DSL violates *Apprendi's* bright-line rule: Except for a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* at 868 (internal quotation marks and citations omitted). California's DSL thus "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." *Id.* at 860.

[1] The State argues that the Supreme Court's holding in *Cunningham*-that California's DSL violates the Sixth Amendment because it raises the statutory maximum based on facts found by a judge, rather than a jury-is a "new rule" of constitutional law and therefore cannot be applied retroactively on collateral review under *Teague v. Lane.*[FN7]When a State raises the issue of retroactivity, "federal habeas courts *must* apply *Teague* before considering the merits" of a claim. *Beard v. Banks,* 542 U.S. 406, 412, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (emphasis in original) (internal quotation marks omitted). We therefore address the *Teague* argument first.

FN7.*Teague* was a plurality opinion, but the

*Teague* rule was adopted by a majority of the Court shortly thereafter in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *See Danforth v. Minnesota,* --- U.S. ---, 128 S.Ct. 1029, 1033 n. 1, 169 L.Ed.2d 859 (2008).

[2][3] Under *Teague,* "old" rules of criminal procedure apply "both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting,* --- U.S. ---, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007). Butler's conviction became final on November 7, 2005, when the time for seeking direct review of the California Court of Appeal decision in his case expired. *See Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); Cal. R. Ct. 24(a), 28(b), 45(a). The decision in *Cunningham* is thus a "new rule" that cannot be applied to Butler's habeas petition if "the result was not *634dictated* by precedent" as of November 7, 2005. *Teague v. Lane,* 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original).[FN8] The "new rule" principle "validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v. McKellar,* 494 U.S. 407, 414, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

FN8. A new rule may be applied on collateral review if it places certain primary conduct beyond the reach of the criminal law, or constitutes a "watershed" rule of criminal procedure "implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Butler does not argue that either of these two exceptions applies, and we do not address them.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

[4][5] To determine whether precedent dictated the holding that California's DSL is inconsistent with the Sixth Amendment, we must "ascertain the legal landscape as it ... existed [before November 7, 2005] and ask whether the Constitution, as interpreted by the precedent then existing, compel[led] the rule." *Beard, 542 U.S. at 411, 124 S.Ct. 2504*(citation and internal quotation marks omitted); *see also Teague, 489 U.S. at 301, 109 S.Ct. 1060* ("[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."). *Teague* does not, however, require a habeas petitioner to show that "the Supreme Court ha[s] decided a case involving identical facts, circumstances, and legal issues." *See Keating v. Hood, 191 F.3d 1053, 1061 n. 11 (9th Cir.1999), overruled in part on other grounds by Payton v. Woodford, 346 F.3d 1204, 1216 (9th Cir.2003)*. Rather, when a general rule must be applied in a new situation, "it can hardly be thought to have created a new principle of constitutional law." *Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir.2007), cert. denied, --- U.S. ----, 128 S.Ct. 722, 169 L.Ed.2d 565 (2007).*[FN9] In particular, in the context of applying rules of constitutional law to statutory schemes from different states, we have noted that "applying existing constitutional rules to different state sentencing schemes d[oes] not implicate *Teague.*" *Beardslee v. Brown, 393 F.3d 1032, 1040 (9th Cir.2004)* (citing *Stringer v. Black, 503 U.S. 222, 229, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)* (holding that the Supreme Court's conclusion that California's death penalty statute was a "weighing" statute, where the definition of "weighing" had been established in a case involving a Mississippi statute, was not a new rule)).

FN9. Butler argues that we need not decide whether *Cunningham* announced a "new rule" because his "petition relies not on *Cunningham,* but on his rights to proof beyond a reasonable doubt and jury trial as established by *Apprendi, Blakely,* and [*United States v.*] *Booker* [, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621

(2005) ]." This distinction is irrelevant to our task: Whether Butler asks us to apply to him a Supreme Court decision issued after his conviction became final, or to announce independently the very holding that the Supreme Court arrived at in a case decided after his conviction became final, we must determine whether the result he requests was "dictated" by precedent before his conviction was final. *See Caspari v. Bohlen, 510 U.S. 383, 395-96, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)* (determining whether the result that the petitioner was arguing for in his collateral review proceeding would require creation of a new rule in violation of *Teague* ). The pivotal question is thus the same either way: did *Apprendi, Blakely,* and *Booker* compel the conclusion that California's DSL violates the Sixth Amendment?

[6][7] Looking at the legal developments prior to *Cunningham,* we conclude that the Supreme Court's Sixth Amendment case law at the time Butler's conviction became final compelled the conclusion that California's DSL was unconstitutional.*635[FN10] First in the line of pertinent cases was *Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),* which held that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' "*Id. at 476, 120 S.Ct. 2348* (quoting *Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)*). Next, *Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004),* clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* " and reaffirmed *Apprendi*'s "bright-line rule." *Id. at 303, 124 S.Ct. 2531* (emphasis in original). Finally, *United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),* held that the Federal Sentencing Guidelines were invalid

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

because, as in _Blakely_," "the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." " _Id_ at 235, 125 S.Ct. 738 (quoting _Blakely_ 542 U.S. at 305, 124 S.Ct. 2531). Taken together, _Apprendi_, _Blakely_, and _Booker_, firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment.

> FN10. In determining whether a rule is "new" for _Teague_ purposes, we may also consider our own case law. _See Leavitt v. Arave_, 383 F.3d 809, 819 (9th Cir.2004) (per curiam) ("[C]ircuit court holdings suffice to create" an old rule under _Teague._(internal quotation marks omitted)). In this case, however, a review of Supreme Court precedent is sufficient to demonstrate that the rule for which Butler argues is not new.

That the California DSL squarely violated this principle-and that the result in _Cunningham_ was compelled by precedent-is best illustrated by comparing the Washington sentencing statute at issue in _Blakely_ with California's DSL. The Washington law in _Blakely_ provided that "[a] judge may impose a sentence above the standard range if he finds 'substantial and compelling reasons justifying an exceptional sentence.' "_542 U.S. at 299_, 124 S.Ct. 2531. California's DSL similarly required imposition of the middle term unless the judge found factors in aggravation or mitigation. _SeeCal.Penal Code §_ 1170(b); _Cal. R. Ct. 4.420(a)_. Like California's DSL, Washington law provided a non-exhaustive list of possible reasons for an exceptional sentence, and stated that "a reason offered to justify an exceptional sentence [could] be considered only if it t[ook] into account factors other than those which are used in computing the standard range sentence for the offense," i.e., factors other than those found by a jury beyond a reasonable doubt. _Blakely_ 542 U.S. at 299, 304, 124 S.Ct. 2531 (internal quotation

marks omitted); _cf._Cal. R. Ct. 4.421, 4.423 (lists of factors in aggravation and mitigation); _id._ 4.408(a) (judge may consider additional criteria); _id._ 4.420(d) ("A fact that is an element of the crime upon which punishment is being imposed may not be used to impose the upper term.").

A judge's decision to impose an exceptional sentence under Washington law was reversible if "there [wa]s insufficient evidence in the record to support the reasons for imposing an exceptional sentence." _Blakely_ 542 U.S. at 299-300, 124 S.Ct. 2531. A judge's sentencing decision under the DSL was also reviewable. _See, e.g., People v. Osband_, 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640 (1996) (reviewing a sentence imposed under the DSL). Finally, like a judge applying the California DSL, the Washington sentencing judge was not required to impose an *636 exceptional sentence if he found a single aggravating fact, but rather could make a judgment that a lower sentence was appropriate based on all the facts, as long as he provided sufficient reasons. _Blakely_ 542 U.S. at 305 n. 8, 124 S.Ct. 2531;_cf._Cal. R. Ct. 4.420(b), (e).

Examining the Washington law at issue in _Blakely_ the Supreme Court recognized both that the judge had discretion to determine whether to impose an exceptional sentence and that there was not an exhaustive list of mitigating and aggravating factors. _Blakely_ 542 U.S. at 305 & n. 8, 124 S.Ct. 2531.These factors did not affect the Court's conclusion that the Washington sentencing scheme violated the Sixth Amendment. _Id._ Instead, because the maximum possible penalty for the crime was set based on facts that had been found by a judge and not by a jury, the sentence was invalid. _Id._Cunningham reiterated these same points, rejecting arguments already disapproved in _Blakely._See_127 S.Ct. at 869 (noting that the Court had already held in _Blakely_ that "broad discretion to decide what facts may support an enhanced sentence, or to determine whether an enhanced sentence is warranted in any particular case, does not shield a sentencing system" from the brightline rule of _Apprendi_

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                          Page 16
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

).

In short, *Cunningham* did not add " 'any new elements or criteria for' " determining when a state statute violates the Sixth Amendment. *Boyd v. Newland,* 467 F.3d 1139, 1146 (9th Cir.2006), *cert. denied*--- U.S. ----, 127 S.Ct. 2249, 167 L.Ed.2d 1089 (2007) (quoting *Murphy v. Dretke,* 416 F.3d 427, 439 (5th Cir.2005)); *see also Beardslee,* 393 F.3d at 1040. It simply applied the rule of *Blakely* to a distinct but closely analogous state sentencing scheme. That the Supreme Court held for the first time that *California*'s sentencing scheme violates the Sixth Amendment does not render its decision in *Cunningham* a new rule.

The State advances a number of objections to this conclusion, but each fails for the same reason: the State cannot identify any relevant difference between the sentencing scheme in *Blakely* and that in *Cunningham.* The State points, first, to the fact that we have held that *Apprendi, Blakely,* and *Booker* announced "new rules." *See Jones v. Smith,* 231 F.3d 1227, 1236-37 (9th Cir.2000)(*Apprendi*);*Schardt v. Payne,* 414 F.3d 1025, 1035-36 (9th Cir.2005)(*Blakely*);*United States v. Cruz,* 423 F.3d 1119, 1120 (9th Cir.2005) (per curiam) (*Booker* ). But *Apprendi, Blakely,* and *Booker* were each sufficiently distinguishable from the cases that preceded them that courts might reasonably have disagreed as to the application of precedent. And, of course, the status of *Apprendi, Blakely,* and *Booker* as new rules has little bearing on whether they, collectively, compelled the result in *Cunningham.*

[8] Second, the State maintains that the existence of two dissents in *Cunningham* shows that not all reasonable jurists would have felt compelled to hold that California's sentencing scheme violates the Sixth Amendment. Dissents to the decision announcing a rule are relevant to the new rule analysis, but their existence does not alone

"suffice[ ] to show that the rule is new." *Beard,* 542 U.S. at 416 n. 5, 124 S.Ct. 2504;*see Boyd,* 467 F.3d at 1145-46 (holding that *Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), a case that engendered a dissent in the Supreme Court, did not create a new rule). For one thing, dissents do not always rest on the assertion that the precedents do not support the legal rule applied by the majority. They are sometimes used to argue for a modification or overruling of existing precedent, or to express *637 an ongoing disagreement with an entire line of cases. *See, e.g., Desist v. United States,* 394 U.S. 244, 258-59, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) (arguing that *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which dictated the result in *Desist,* was wrongly decided and that new constitutional decisions must be applied to all cases on direct review); *Williams v. United States,* 401 U.S. 667, 677-81, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) (continuing to argue that new rules must be applied to all cases on direct review); *Walton v. Arizona,* 497 U.S. 639, 674-75, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (Brennan, J., dissenting), *overruled by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (adhering to his view "that the death penalty is in all circumstances a cruel and unusual punishment").

Also, dissents often disagree with the majority's application of established legal principles to discrete factual circumstances, and do not suggest that the majority has adopted a "new rule" of constitutional law. *See, e.g., Rompilla v. Beard,* 545 U.S. 374, 377, 385-86 & n. 3, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (holding, despite a dissent, that the petitioner was entitled to habeas relief because counsel's failure to examine evidence that the government intended to present in aggravation at sentencing phase violated the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Neither variety of dissent indicates that there are reasonable alternative interpretations of the constitutional rule existing at the time they are written.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

In contrast, when the Supreme Court has relied in part on dissents in earlier cases in applying *Teague,* the dissents in question have addressed considerations pertinent to the *Teague* analysis. *See Beard,* 542 U.S. at 414-16, 124 S.Ct. 2504 (considering whether the decisions in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), which held that the Constitution prohibits states from requiring jurors to find mitigating factors unanimously, announced a new rule, and pointing to the dissents in *Mills* and *McKoy* as evidence that there was a significant difference between the issues addressed in *Mills* and *McKoy* and earlier cases).[FN11]

> FN11. In *Mills,* for example, the dissenters argued that previous case law controlled only the sentencing judge's consideration of mitigating factors, rather than the acts of individual jurors. 486 U.S. at 394, 108 S.Ct. 1860 (Rehnquist, J., dissenting). In *McKoy,* the dissenters maintained that previous cases had controlled only what evidence may be considered, not how it must be considered. 494 U.S. at 465-66, 110 S.Ct. 1227 (Scalia, J., dissenting). Although the dissenters were ultimately "wrong," in the sense that their positions were rejected by the majority of the court, they made arguments that the conclusions in *Mills* and *McKoy* were not required by precedent, and identified actual, if ultimately not legally significant, distinctions between these cases and prior precedent.

The dissents in *Cunningham* were not of the variety relied on in *Beard.* Justice Kennedy's *Cunningham* dissent, joined by Justice Breyer, did not contend that *Cunningham* was wrongly decided, but instead maintained that "the *Apprendi* line of cases remains

incorrect." *See Cunningham,* 127 S.Ct. at 872 (Kennedy, J., dissenting). The dissent then went on to suggest a modification of the *Apprendi* rule for future cases which would have limited it to facts related to the nature of the crime, rather than the nature of the offender, but did not argue that its proposed modification was consistent with the *638 Court's Sixth Amendment precedents. *See id.* at 872-73. Instead, Justice Kennedy's *Cunningham* dissent relied on the *dissents* in *Blakely.See id.* at 872 ("As dissenting opinions have suggested before, the Constitution ought not to be interpreted to strike down all aspects of sentencing systems that grant judicial discretion with some legislative direction and control.") (citing *Blakely,* 542 U.S. at 314, 124 S.Ct. 2531) (dissenting opinion of O'Connor, J.), and *id.* at 326-27, 124 S.Ct. 2531 (dissenting opinion of Kennedy, J.). Because the dissent did not present an argument that *Apprendi, Blakely,* and *Booker* can be interpreted to reach a result different from that reached in *Cunningham,* it does not shed light on the *Teague* inquiry.

Justice Alito's dissent is similarly unhelpful to the State, as that dissent also presented no argument that *Blakely* could be applied in *Cunningham* to reach a different result. Instead, Justice Alito, joined by Justices Kennedy and Breyer, contended, primarily, that the majority misapprehended California law, not that the DSL, *as the majority understood it,* passes constitutional muster under *Apprendi, Blakely,* and *Booker.Id.* at 876-79, 127 S.Ct. 856 (Alito, J., dissenting). Moreover, the dissent argued that the *practical* effect of the California DSL, as Justice Alito understood it, was indistinguishable from the federal sentencing system after *Booker.* The *Cunningham* majority pointed out, however, that the dissent's discussion depended on assumptions about aspects of the operation of the federal sentencing guidelines after *Booker* that had yet to be established.[FN12]*See id.* at 873. In this focus on the practical effects of the California and federal sentencing schemes, Justice Alito's dissent echoed a position rejected by the majority in *Blakely, see*542 U.S. at 320-22, 124 S.Ct. 2531 (O'Connor, J., dissenting).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                    Page 18
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Further, to the extent that Justice Alito's dissent suggested that the existence of appellate review of the ultimate sentence mitigates that principle, *see Cunningham,* 549 U.S. at 277-78, 127 S.Ct. 856, it was, in essence, an argument for overruling *Blakely,* which involved a sentencing scheme including judicial review, *see Blakely,* 542 U.S. at 299-300, 124 S.Ct. 2531. For these reasons, Justice Alito's *Cunningham* dissent does not suggest that reasonable alternative interpretations of *Blakely* were available.

FN12. In fact, subsequent Supreme Court cases have disproved Justice Alito's assumptions about judicial review of district court sentencing decisions post-*Booker.* In particular, Justice Alito was mistaken in his view that judicial review would effectively prevent district court judges from substantially departing from the guidelines in the absence of any case-specific facts. *See Kimbrough v. United States,* --- U.S. ----, 128 S.Ct. 558, 575, 169 L.Ed.2d 481 (2007) (holding that "it would not be an abuse of discretion for a district court to conclude that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case"); *id.* at 570 (noting the government's position that, "as a general matter, courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines" (internal quotation marks and alterations omitted)); *see also Rita v. United States,* --- U.S. ----, 127 S.Ct. 2456, 2466, 168 L.Ed.2d 203 (2007) (explaining that even application of a presumption of reasonableness does not render the new Guideline regime unconstitutional because, unlike the regime in *Blakely,* it does not "*forbid* [ ] a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find").

In the end, the State's position would require us to hold that each time a rule of general applicability, such as that announced in *Blakely,* is applied to a discrete circumstance, a new rule of constitutional law is created. Not only is that result **639 inconsistent with the pertinent case law, it is not supported by the purposes of non-retroactivity on collateral review. In *Teague,* the Supreme Court adopted Justice Harlan's view that habeas " 'serves as a necessary additional incentive for trial and appellate courts ... to conduct their proceedings in a manner consistent with established constitutional standards.' "489 U.S. at 306, 109 S.Ct. 1060 (quoting *Desist,* 394 U.S. at 262-63, 89 S.Ct. 1030 (Harlan, J., dissenting)). Habeas courts can maintain this incentive without applying new constitutional standards to cases in which state courts had complied with "the constitutional standards that prevailed at the time the original proceedings took place." *Id.* To apply new rules to final state court convictions would threaten important principles of finality in criminal proceedings as well as of respect for state courts. *Id.* at 308-10, 109 S.Ct. 1060.

In this case, *Apprendi, Blakely,* and *Booker* made "courts throughout the land" aware that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of defendants. *Id.* at 306, 109 S.Ct. 1060. No principles of comity or federalism would be served by refusing to apply this rule to functionally indistinguishable state sentencing schemes on collateral review. *Cunningham* thus did not announce a new rule of constitutional law and may be applied retroactively on collateral review.

**B. Exhaustion.**

The State also argues that Butler's habeas petition must be dismissed for failure to exhaust, because *Cunningham*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                    Page 19
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

constitutes an intervening change in federal law that casts the legal issue in a fundamentally different light. *See Blair v. California,* 340 F.2d 741, 745 (9th Cir.1965). Before *Teague,* we sometimes held a habeas petition unexhausted because of changes in federal law. *See, e.g., id.* at 743-45 (holding that an issue was not exhausted where Supreme Court subsequently decided *Douglas v. California,* 372 U.S. 353, 357, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (holding that indigent defendants are entitled to counsel in their first appeal as of right)); *Davis v. California,* 341 F.2d 982, 986 n. 11 (9th Cir.1965).

[9] After *Teague,* an intervening change in federal law that casts the legal issue in a fundamentally different light is a "new rule" that cannot be applied on collateral review under any circumstances, regardless of whether the petitioner has exhausted his state court remedies. In other words, after *Teague,* the *Douglas* line of cases no longer serves any function. Where there is no new rule announced, the state court has had a fair chance to address the issue when it was raised, and there is no reason to require further exhaustion. We hold that when a petitioner raises a claim in state court that is later resolved in a case that announced no "new rule," a petitioner is not obligated to return to state court to exhaust his remedies under that case.

## C. AEDPA.

[10] Butler's petition was filed after April 24, 1996, so the provisions of the Antiterrorism and Effective Death Penalty Act apply to his petition. *See Fields v. Brown,* 503 F.3d 755, 763 (9th Cir.2007) (en banc), *cert. denied—* U.S. ----, 128 S.Ct. 1875, --- L.Ed.2d ---- (2008). Under AEDPA, we cannot grant habeas relief to Butler unless the State court's decision in his case was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Supreme Court precedents that "qualify as an old rule under *640 [*Teague* ] ... constitute 'clearly established Federal law' " within the meaning of AEDPA. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We therefore proceed from the premise that the case law on a defendant's Sixth Amendment rights was clearly established when Butler's conviction became final and address only the other requirements of AEDPA.

[11][12] "A state court decision is contrary to clearly established federal law if the state court either applies a rule that contradicts the governing law set forth by the Supreme Court or arrives at a different result when confronted by a set of facts that are materially indistinguishable from a decision of the Supreme Court." *Sims v. Rowland,* 414 F.3d 1148, 1151 (9th Cir.2005) (citing *Williams v. Taylor,* 529 U.S. at 405-06, 120 S.Ct. 1495). An unreasonable application of federal law results when a state court "applies [Supreme Court] precedents to the facts in an objectively unreasonable manner," or unreasonably fails "to extend the holding or legal principles of a Supreme Court decision to a situation in which it should have controlled." *Id.* at 1152 (internal quotation marks omitted).

[13][14] In reviewing a state court decision under § 2254(d)(1), we "look to the last reasoned decision of the state court as the basis for the state court's judgment." *Polk v. Sandoval,* 503 F.3d 903, 909 (9th Cir.2007). The California Court of Appeal issued the last reasoned state court decision when it rejected Butler's direct appeal. In denying Butler's challenge to his sentence, the California Court of Appeal relied entirely on the reasoning of the California Supreme Court in *Black I.* We therefore look to the reasoning of *Black I* to determine whether the AEDPA requirements have been met.

*Black I* reached its result-upholding the DSL-by applying

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Page 20

a rule of decision contrary to clearly established Supreme Court precedent. The California Supreme Court articulated the relevant question as

> whether a trial judge's decision to impose an upper term sentence under the California determinate sentencing law involves the type of judicial factfinding that traditionally has been performed by a judge in the context of exercising sentencing discretion or whether it instead involves the type of factfinding that traditionally has been exercised by juries in the context of determining whether the elements of an offense have been proved.

*Black I,* 35 Cal.4th at 1253-54, 29 Cal.Rptr.3d 740, 113 P.3d 534. Applying that rule, the court concluded that the upper term is the relevant statutory maximum, because California's DSL "simply authorize[s] a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence." *Id.* at 1254, 29 Cal.Rptr.3d 740, 113 P.3d 534. The California Supreme Court so ruled even though a sentencing court "cannot impose the upper term unless there is at least one aggravating factor." *Id.*

The rule applied in *Black I* is nowhere to be found in Supreme Court precedent. Instead, it parallels the position of the *dissenters* in several of the Supreme Court's sentencing cases. *See Booker,* 543 U.S. at 235-36, 125 S.Ct. 738 (rejecting the dissent's reliance on the traditional authority of judges to engage in factfinding as to matters relevant to sentencing); *Apprendi,* 530 U.S. at 535, 120 S.Ct. 2348 (O'Connor, J., dissenting) (arguing that it is acceptable to allow judges to engage in factfinding as to matters that have traditionally been treated as affecting punishment rather than as elements); *accord* *641 *Black I,* 35 Cal.4th at 1270, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Kennard, J., concurring and dissenting) ("Nothing in the high court's majority opinions in *Apprendi, Blakely,* and

*Booker* suggests that the constitutionality of a state's sentencing scheme turns on whether, in the words of the majority here, it involves the type of factfinding that traditionally has been performed by a judge."(internal quotation marks omitted)).

In fact, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. Rather than applying this bright-line rule, *Black I* applied a "traditional judicial factfinding" rule inconsistent with Supreme Court precedent. Its decision was therefore "contrary to" the clearly established law of the Supreme Court, and the requirements of AEDPA are met. *See Price v. Vincent,* 538 U.S. 634, 640, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (noting that a decision is contrary to clearly established law if it "applies a rule" that contradicts Supreme Court precedent).

### D. Constitutional Violation.

[15] Our conclusion that the decision of the California Court of Appeal was "contrary" to clearly established Supreme Court precedent is not the end of our inquiry. Our power to grant the writ of habeas corpus to a state inmate depends on his actually being "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). Having held that the requirements of AEDPA have been met, we must also determine, applying a de novo review standard, whether there has been a constitutional violation. *See Frantz v. Hazey,* 513 F.3d 1002, 1013 (9th Cir.2008) (en banc) (holding that, "[w]hen 'the requirement set forth in § 2254(d)(1) is satisfied, a federal court must then resolve the constitutional claim without the deference AEDPA otherwise requires' ") (quoting *Panetti v. Quarterman,* ---U.S. ----, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007)). We therefore proceed to a de novo analysis of whether,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                    Page 21
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

under a correct understanding of Supreme Court precedent, Butler's sentence violates the Sixth Amendment. The State contends that Butler's sentence does not violate the Constitution because, under California law, the existence of a single aggravating factor is sufficient to authorize an upper term sentence, and the "probation" aggravating factor comes within the exception for "prior convictions" created by _Almendarez-Torres v. United States,_ 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

_Almendarez-Torres_ held that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt. _Id._ at 244, 247, 118 S.Ct. 1219. We agree that, under California law, only one aggravating factor is necessary to authorize an upper term sentence. So the probation factor alone would suffice to render the sentence constitutional were it found applicable in a manner consistent with the Sixth Amendment. We conclude, however, that whether the defendant was on probation at the time of commitment of a crime does not come within the narrow _Almendarez-Torres_ exception to the fact-finding requirements established in the _Apprendi_ line of cases and so cannot suffice to make Butler's sentence constitutional.

**1. California law.**

The California Supreme Court revisited its decision in _Black I_ after a remand from the United States Supreme Court for reconsideration in light of _Cunningham._ *642 See _People v. Black,_ 41 Cal.4th 799, 805, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (2007) ("_Black II_"). _Black II_ once again upheld Black's sentence, on the ground that, "under the DSL[,] the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." _Id._ at 815, 161 P.3d 1130. _Black II_ observed that, under Supreme Court precedent, "as long as a single aggravating circumstance ... has been

established in accordance with the requirements of _Apprendi_ and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence ... does not violate the defendant's right to jury trial." _Id._ at 812, 62 Cal.Rptr.3d 569, 161 P.3d 1130. One of the aggravating factors in Black's case was the existence of a prior conviction. The California Supreme Court concluded, applying _Almendarez-Torres,_ that that factor had been established in a manner consistent with the Constitution; so Black's sentence was not unconstitutional. _Id._ at 816, 62 Cal.Rptr.3d 569, 161 P.3d 1130.

[16] Butler argues that we should not accept the _Black II_ court's interpretation of the California DSL as requiring only a single aggravating factor to authorize the upper term. As an initial matter, Butler waived this argument by failing to raise it either in the district court or in his brief on appeal, mentioning it for the first time at oral argument. See _Nw. Acceptance Corp. v. Lynnwood Equip., Inc.,_ 841 F.2d 918, 923 (9th Cir.1988).

[17] Even were the issue not waived, however, Butler's argument would fail. We are bound to accept a state court's interpretation of state law, except in the highly unusual case in which the "interpretation is clearly untenable and amounts to a subterfuge to avoid federal review" of a constitutional violation. _Knapp v. Cardwell,_ 667 F.2d 1253, 1260 (9th Cir.1982); see _Mullaney v. Wilbur,_ 421 U.S. 684, 691 n. 11, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The California Supreme Court's interpretation of the DSL is not so inconsistent with prior case law or the statute itself as to suggest that it is merely a subterfuge. Before _Black II,_ the California courts had frequently held that only a single aggravating factor is required to support an upper term sentence. See, e.g., _People v. Osband,_ 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640 (1996); _People v. Forster,_ 29 Cal.App.4th 1746, 35 Cal.Rptr.2d 705, 713 (1994) ("[A] single valid factor in aggravation is sufficient to justify

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

the imposition of the upper term."); *People v. Piceno*, 195 Cal.App.3d 1353, 241 Cal.Rptr. 391, 395 (1987) (same). Although the state courts before *Cunningham* were addressing a somewhat different question-whether the trial court had abused its discretion in selecting the upper term sentence from among those available-it is consistent with these earlier cases to hold that only one aggravating factor was necessary to set the upper term as the statutory maximum. Indeed, it would be strange if more aggravating factors were required to *set* the upper term as the statutory maximum than are required to justify *selection* of the upper term once the maximum has been raised.

Further, although the California Rules of Court state that "*[s]election* of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation,"Cal. R. Ct. 4.420(b) (emphasis added), the statute itself provides that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime,"Cal.Penal Code § 1170(b). The weighing language of the Rules of Court can reasonably be interpreted as guiding a judge's discretion to *643select a term within the statutory maximum set by section 1170(b) after an aggravating factor has been found. In short, California's interpretation of the DSL is not "clearly untenable."

[18][19] Having established that, under California law, only one aggravating factor is necessary to set the upper term as the maximum sentence, we turn to analyzing whether Butler's sentence was imposed in violation of the Constitution. The Sixth Amendment does not prevent judges from "exercis[ing] discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute." *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348. In imposing a sentence, judges may "implicitly rule on those facts [they] deem[ ] important to the exercise of [their] sentencing discretion." *Blakely*, 542

U.S. at 309, 124 S.Ct. 2531. For that reason, if at least one of the aggravating factors on which the judge relied in sentencing Butler was established in a manner consistent with the Sixth Amendment, Butler's sentence does not violate the Constitution. Any additional factfinding was relevant only to selection of a sentence within the statutory range.

**2. Probation and the "Prior Conviction" Exception.**

[20] The trial court imposed an upper term sentence on Butler based on two aggravating factors: his victim was particularly vulnerable, and he was on probation at the time he committed the assault. The State argues that Butler's sentence does not violate the Constitution because the fact that Butler was on probation at the time of the crime was found in a manner consistent with the Constitution. We cannot agree with the State's premise-that the narrow exception for prior convictions extends to a defendant's probationary *status* at the time of the instant crime.

In *Almendarez-Torres,* the Supreme Court determined that the fact of a prior conviction for an aggravated felony need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt. 523 U.S. at 247, 118 S.Ct. 1219. Subsequent sentencing cases, however, have substantially undermined the basis for this conclusion. Distinguishing *Almendarez-Torres*, *Apprendi* characterized the "prior conviction" exception as at best "an exceptional departure from" historic sentencing practice, 530 U.S. at 487, 120 S.Ct. 2348, and observed that it is "arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested,"*id.* at 489-90, 120 S.Ct. 2348,*See also id* at 518-19, 120 S.Ct. 2348 (Thomas, J., concurring) (concluding that *Almendarez-Torres* was wrongly decided); *Shepard v. United States,* 544 U.S. 13, 27-28,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                    Page 23
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring in part and in the judgment) (observing that "a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided" and suggesting that, "in an appropriate case, this Court should consider *Almendarez-Torres'* continuing viability").

Nonetheless, the Supreme Court has not overruled the *Almendarez-Torres* exception for prior convictions, continuing to hold that "*[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added); *see also Booker,* 543 U.S. at 244, 125 S.Ct. 738;*Blakely,* 542 U.S. at 301, 124 S.Ct. 2531. Concommitantly, we have repeatedly recognized our obligation to apply the *644*Almendarez-Torres* exception, unless and until it is rejected by the Supreme Court. *See, e.g., United States v. Lopez,* 500 F.3d 840, 848 (9th Cir.2007), *cert. denied,*--- U.S. ----, 128 S.Ct. 950, 169 L.Ed.2d 782 (2008); *United States v. Diaz-Argueta,* 447 F.3d 1167, 1170 (9th Cir.2006); *United States v. Weiland,* 420 F.3d 1062, 1079 n. 16 (9th Cir.2005).

We are left, then, with the task of determining the outer bounds of the "prior conviction" exception after *Apprendi.* We find some guidance in *Shepard,* which addressed the kind of evidence on which a court may rely in determining whether a prior conviction constitutes a crime of violence for purposes of the Armed Career Criminal Act of 1984 ("ACCA"). 544 U.S. at 15-16, 125 S.Ct. 1254.*Shepard* noted *Almendarez-Torres'* exception for prior convictions, but also recognized that a district court's findings of fact about the basis for a prior guilty plea or conviction at some point "raise[ ] the concern underlying ...*Apprendi,*" that is that the Constitution "guarantee[s] a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence."

*Id.* at 25, 125 S.Ct. 1254.

Without delineating precisely the line between those facts that come within the *Almendarez-Torres* exception and those that do not, *Shepard*"avoid[ed] serious risks of unconstitutionality" by "limit[ing] the scope of judicial factfinding" under the ACCA to whether a prior guilty plea or jury verdict necessarily constitutes a conviction for the "generic" crime at issue. *Id.* at 25-26, 125 S.Ct. 1254. Specifically, where the conviction is by guilty plea, a judge may consider only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16, 125 S.Ct. 1254;*see also Taylor v. United States,* 495 U.S. 575, 602, 610, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (indicating the documents which may permissibly be considered in a case where conviction is by jury verdict). *Shepard* thus strongly suggests that the *Almendarez-Torres* exception does not extend to any and all facts related to a prior conviction. Rather, to avoid a potential conflict with the Sixth Amendment, *Shepard* limited the consideration of prior convictions at judicial sentencing to those facts that can be established by the "prior judicial record" of conviction.

Heeding the Supreme Court's cautions about *Almendarez-Torres* and *Shepard*s guidance, we have been hesitant to broaden the scope of the prior conviction exception to facts not apparent on the face of conviction documents. *United States v. Kortgaard,* 425 F.3d 602, 610 (9th Cir.2005) (concluding that we must treat *Almendarez-Torres* as a "narrow exception to the general rule"). Under our precedents, the exception does not extend to qualitative evaluations of the nature or seriousness of past crimes, because such determinations cannot be made solely by looking to the documents of conviction. *See id.* at 607 (holding that "seriousness" of past crimes and "likelihood of recidivism" are not facts that come within the "prior conviction" exception); *Stokes*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                          Page 24
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

*v. Schriro*, 465 F.3d 397, 404 (9th Cir.2006) (holding that the determination whether the present offense is "strikingly similar" to a past offense does not come within the "prior conviction" exception).

Nor does the *Almendarez-Torres* exception apply to past convictions as a juvenile or to prior removal proceedings, because those underlying proceedings lack full Sixth Amendment protections. *See United States v. Tighe*, 266 F.3d 1187, 1193-95 (9th Cir.2001) ("[T]he 'prior conviction' exception to *Apprendi's* general rule must be *645 limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt."(citing *Apprendi*, 530 U.S. at 496, 120 S.Ct. 2348)); *United States v. Covian-Sandoval*, 462 F.3d 1090, 1097-98 (9th Cir.2006), *cert. denied*,--- U.S. ----, 127 S.Ct. 1866, 167 L.Ed.2d 355 (2007) (holding that prior removal proceedings are not within the exception because they "are civil, not criminal, lacking both juries and the reasonable doubt standard").

Our case law on criminal penalties for illegal reentry is especially instructive. In *United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir.2007), *cert. denied*--- U.S. ---, 128 S.Ct. 2523, --- L.Ed.2d ----, 2008 WL 1881475 (U.S. May 27, 2008) (No. 07-10561), we addressed a conviction under 8 U.S.C. § 1326(b)(1), which raises the maximum term for illegal reentry from two to ten years if the relevant prior "removal [i]s subsequent to a conviction for commission of ... a felony." The jury had found that Salazar-Lopez was removed from the United States at some point, but was not required to find the date of that removal. *Salazar-Lopez*, 506 F.3d at 751. We held that a district judge could determine whether there was a prior felony conviction without committing *Apprendi* error, but that the *timing* of the subsequent removal must be pleaded in an indictment and proved to a jury beyond a reasonable doubt. *Id.* at 751-52. This was so, even though the statutory maximum was based in part on the fact and

timing of a prior conviction reflected in conviction documents, and even though the date of the later removal was reflected in documents from an immigration court. In other words, where the basis for the higher statutory maximum depends on facts that occurred after the prior conviction and is not evident on the face of conviction documents, application of the higher statutory maximum violates *Apprendi. Id.* at 752.

[21] In sum, our case law establishes three prerequisites for applying the *Almendarez-Torres* exception. First, "[t]he fact of a prior conviction is the *only* fact that both increases a penalty beyond the statutory maximum and can be found by a sentencing court." *Covian-Sandoval*, 462 F.3d at 1097. Second, the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary "facts that are derived or inferred" from a prior conviction or from the conviction documents. *Kortgaard*, 425 F.3d at 610. Third, as the prior conviction exception is justified by the reliability of court documents created as part of a process with Sixth Amendment safeguards, it does not extend to facts that may be proven only by reference to documents that were not developed as a result of such a process. *See Covian-Sandoval*, 462 F.3d at 1097-98; *Tighe*, 266 F.3d at 1195.

Applying these established principles to the determination of a defendant's current probation status, we conclude that such status does not come within the narrow prior conviction exception. That the defendant was initially sentenced to probation should be ascertainable from the conviction documents and, we may assume, would be a fact coming within the prior conviction exception.[FN13] The fact that a defendant*646 was on probation at the moment of the current crime, however, is not reflected in the documents of a prior conviction nor, for that matter, may it be conclusively inferred from those documents.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

FN13. Indeed, we have permitted judges to make factual findings regarding the sentence initially imposed for a prior conviction, which is apparent on the face of conviction documents. For example, under *Almendarez-Torres*, a finding by a judge of a prior conviction for an aggravated felony can be the basis for raising the maximum term in an illegal reentry case under § U.S.C. § 1326(b), *see United States v. Calderon-Segura*, 512 F.3d 1104, 1111 (9th Cir.2008), and aggravated felonies are often defined in terms of the length of the sentence imposed, *see, e.g.*, 8 U.S.C. § 1101(a)(43)(F) ("a crime of violence ... for which the term of imprisonment [is] at least one year"); *id.* § 1101(a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.").

In contrast, we have never held that the amount of time ultimately served, or the defendant's status as a prisoner at the time of the crime-facts analogous to the probation factor in this case-come within the exception. Although some of our cases have stated generally that "criminal history" determinations under U.S.S.G. § 4A1.1 come within the prior conviction exception, we have never so held in a case involving subsections (d) and (e) of that Guideline, which assign points for committing a crime while on probation or while incarcerated and for committing a crime within two years of release from prison, respectively. *See, e.g., United States v. Hernandez-Castro*, 473 F.3d 1004, 1007 (9th Cir.2007); *United States v. Martin*, 278 F.3d 988, 1006 (9th Cir.2002).

Under California probation law, for example, a judge retains the authority to modify the terms of an individual's probation at any time, including terminating probation early or extending it for a longer term. California Penal Code § 1203.3(a) provides:

The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. The court may at any time when the ends of justice will be subserved thereby and when the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation, and discharge the person so held.

A probation term can therefore be terminated early, or be extended, or be revoked as a result of a probation violation. *See, e.g., People v. Butler*, 105 Cal.App.3d 585, 587, 164 Cal.Rptr. 475 (Cal.Ct.App.1980) (describing early release from probation after determination that probationer was totally disabled); *People v. Cookson*, 54 Cal.3d 1091, 1097, 2 Cal.Rptr.2d 176, 820 P.2d 278 (1991) (extending probation for nonwillful failure to pay restitution). Such changes would not appear in the original conviction documents, as they would occur later.

As a result, the fact that an individual was sentenced to a term of probation at the time of a prior conviction-a fact that may be reflected in conviction documents of the kind approved by *Shepard*-is not sufficient to prove that he was on probation at the time of the current crime. That determination-like the timing of a prior removal in *Salazar-Lopez*-can only be made by drawing inferences from the prior conviction documents and by considering facts and circumstances that occurred after the prior conviction.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                                    Page 26
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

The fact of having been terminated from probation, placed on extended probation, or having probation revoked is, of course, likely to be recorded in court documents. But like a removal proceeding or juvenile adjudication, probation revocation hearings are not conducted with the safeguards that attend a criminal conviction. *See, e.g., People v. Shepherd,* 151 Cal.App.4th 1193, 60 Cal.Rptr.3d 616, 619 (2007) (for revocation of probation, a violation must be proved only by a preponderance of the evidence. Due process does not require that they be so conducted. *See Gagnon v. Scarpelli,* 411 U.S. 778, 787-90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *647Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Requests to modify, extend, or terminate probation may be attended by even fewer procedural formalities than probation revocation hearings, which can lead to incarceration. *See, e.g., Cookson,* 54 Cal.3d at 1096-97, 2 Cal.Rptr.2d 176, 820 P.2d 278 (probation may be extended in circumstances under which it would not be constitutional to revoke probation). We are therefore convinced that the fact of being on probation at the time of a crime does not come within the "prior conviction" exception and must be pleaded in an indictment and proved to a jury beyond a reasonable doubt.[FN14]

> FN14. Our conclusion that probation status at the time of the instant crime does not come within the "prior conviction" exception does not suggest that petitioners will always, or even often, obtain relief when a judge, rather than a jury, has made such a finding. As we discuss further below, *Apprendi* errors are harmless when we can ascertain that a judge was presented with sufficient documents at sentencing-including the original conviction documents and any documents evidencing modification, termination, or revocation of probation-to enable a reviewing or sentencing court to conclude that a jury would have found the relevant fact beyond a reasonable doubt. *See Salazar-Lopez,* 506 F.3d at 755.

We are aware that decisions of several of our sister circuits suggest that whether a defendant was on probation at the time of the crime is a fact that comes within the prior conviction exception and so may be found by a judge by a preponderance of the evidence. *See, e.g., United States v. Corchado,* 427 F.3d 815, 820 (10th Cir.2005); *United States v. Williams,* 410 F.3d 397, 399, 402 (7th Cir.2005); *United States v. Fagans,* 406 F.3d 138, 141-42 (2d Cir.2005). We do not find these cases helpful in analyzing the issue before us.

As far as we can ascertain from the opinions, our sister circuits were not asked to consider whether the fact of being on probation is distinct from other facts associated with a prior conviction. Rather, they were faced only with general *Apprendi* challenges to multiple findings about an individual's criminal history. *See Corchado,* 427 F.3d at 820 (holding that the prior conviction exception extends generally to "subsidiary findings" about a prior conviction); *Williams,* 410 F.3d at 402 (holding that the district court did not err in making "findings as to the fact of his prior convictions or as to the nature of those convictions"); *Fagans,* 406 F.3d at 141-42 (holding generally that facts about "the conviction itself and the type and length of a sentence imposed" come within *Almendarez-Torres* ). Insofar as these cases held only that the question whether the defendant was *originally sentenced* to probation at the time of conviction comes within the *Almendarez-Torres* exception, we do not disagree, for the reasons we have explained. Insofar as these cases from other circuits suggest that the defendant's status as a probationer at the time of the instant crime is within the exception, that result cannot be squared with this circuit's case law, for the reasons we have explained.[FN15] And as the cases do not clearly distinguish the two issues, they *648 contain no reasoning about why post-conviction probation status comes within the prior conviction exception.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                          Page 27
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

FN15. Some of our sister circuits have also taken a broader view of the *Almendarez-Torres* exception, permitting judicial factfinding as to facts that we have held do not come within the *Almendarez-Torres* exception. *See, e.g., Williams,* 410 F.3d at 399, 402 (including fact of juvenile adjudications in the prior conviction exception). Moreover, the circuits that have concluded that probation status is within the prior conviction exception have not explicitly held, as we have, that juvenile adjudications do not come within the exception, or that "facts that are derived or inferred" from conviction documents must be found by a jury. *See Kortgaard,* 425 F.3d at 610;*cf.Corchado,* 427 F.3d at 820 (judge can make "subsidiary findings" based on conviction documents).

We therefore conclude that the Sixth Amendment was violated when Butler's maximum possible term was raised based on facts, other than a prior conviction, that were not admitted or proved to a jury beyond a reasonable doubt.

### E. Harmlessness.

[22][23] Butler is entitled to relief only if the sentencing error in his case is not harmless. *See Washington v. Recuenco,* 548 U.S. 212, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006) (holding that sentencing errors are subject to harmless error analysis). Applying *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), we must determine whether "the error had a substantial and injurious effect on [Butler's] sentence." *Hoffman v. Arave,* 236 F.3d 523, 540 (9th Cir.2001) (internal quotation marks omitted). Under that standard, we must grant relief if we are in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt. *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947

(1995). Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435., 115 S.Ct. 992

[24] Further, in conducting harmless error review of an *Apprendi* violation, we may consider evidence presented at sentencing proceedings. But "we do not consider new admissions made at sentencing in our harmless error inquiry," *Salazar-Lopez,* 506 F.3d at 755 (citing *United States v. Jordan,* 291 F.3d 1091, 1097 (9th Cir.2002)); *see also United States v. Nordby,* 225 F.3d 1053, 1061 n. 6 (9th Cir.2000), *overruled on other grounds by United States v. Buckland,* 289 F.3d 558, 568 (9th Cir.2002) (en banc).FN16

FN16. The parties have brought to our attention *United States v. Zepeda-Martinez,* 470 F.3d 909 (9th Cir.2006), in which it appears that this court did consider a concession made at sentencing in holding that an *Apprendi* error was harmless. *Id.* at 913 (making reference to the defendant's failure to contest the date of his removal at sentencing). *Salazar-Lopez,* however, was decided after *Zepeda-Martinez* and reiterates our long-standing rule that admissions at sentencing are not relevant to an *Apprendi* harmless error analysis. *Salazar-Lopez,* 506 F.3d at 755. Moreover, in *Zepeda-Martinez,* there was "overwhelming" evidence demonstrating the date of Zepeda's removal, without regard to any admission by the defendant. 470 F.3d at 913 (the government introduced a warrant of removal indicating the date of Zepeda's removal and Zepeda himself submitted the first page of the same document in a pre-trial filing). At best, then, *Zepeda-Martinez* stands for the proposition that a defendant's failure at sentencing to dispute a particular fact may be considered in a harmless error analysis when there is overwhelming

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

additional evidence of the relevant fact.

Under California law, as we have explained, only one aggravating factor is necessary to set the upper term as the maximum term. Any *Apprendi* error therefore will be harmless if it is not prejudicial as to just one of the aggravating factors at issue.

Here, the district court noted that it is impossible to know what the trial court *would* have done had it found only one aggravating factor. It concluded that the Sixth Amendment violation therefore could not be harmless unless it did not affect either of the aggravating factors upon which the judge relied. With regard to a Sixth Amendment sentencing violation, however, the relevant question is not what the trial court *would* have done, but what it legally *could* have done. After one aggravating factor was validly found, the trial court legally *could* have imposed the *649 upper term sentence. That the judge might not have done so in the absence of an additional factor does not implicate the Sixth Amendment, as that consideration concerns only the imposition of a sentence within an authorized statutory range.

With these principles in mind, we turn to the aggravating factors that form the basis for Butler's sentence.

**1. Vulnerable Victim.**

[25][26][27] The state trial court found that Daria Butler was a particularly vulnerable victim because "she was attacked from behind." Under California law, vulnerable means " 'defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act.' "*People v. Weaver*, 149 Cal.App.4th 1301, 58 Cal.Rptr.3d 18, 27 (2007) (quoting *People v. Smith*, 94 Cal.App.3d 433, 156 Cal.Rptr. 502, 503 (1979)). A victim

is "particularly" vulnerable only if he is vulnerable to a "special or unusual degree, to an extent greater than in other cases." *People v. Loudermilk*, 195 Cal.App.3d 996, 241 Cal.Rptr. 208, 214 (1987). A victim is thus not "particularly" vulnerable where all victims of the crime of conviction are vulnerable in the same manner. *See People v. Bloom*, 142 Cal.App.3d 310, 190 Cal.Rptr. 857, 865 (1983) (stating that "[a]ll victims of drunk drivers are 'vulnerable victims' ").

There is little doubt, based on the evidence presented at trial, that the jury would have concluded beyond a reasonable doubt that Daria Butler was attacked from behind. Butler never contested the evidence showing that Daria's wounds were to the back of her head, and the jury's verdict demonstrates that it believed Daria's version of the incident. But after examining California case law on the "particularly vulnerable" victim aggravating factor, we have grave doubt about whether a jury would have found that Daria was a particularly vulnerable victim of the crime of domestic assault (Cal.Penal Code § 273.5) because she was attacked from behind.

In the overwhelming majority of cases, "particularly vulnerable victims" have had inherent personal characteristics that, sometimes in combination with the manner in which the crime was committed, render them more vulnerable than other victims. *See, e.g., People v. Bishop*, 158 Cal.App.3d 373, 204 Cal.Rptr. 502, 505 (1984) (victims were very young and of small stature); *People v. McGlothin*, 67 Cal.App.4th 468, 79 Cal.Rptr.2d 83, 87 (1998) (the victims were particularly vulnerable because they were elderly and were attacked in a parking lot late at night); *People v. Karsai*, 182 Cal.Rptr. 406, 416, 182 Cal.Rptr. 406 (Immigration and Nationality Act, § 208(d)(6), 8 U.S.C.A. § 1158(d)(6), 1982) (victim was young and physically weak); *id.* ("While age and physical traits are not the only factors which may indicate particular vulnerability, they are the most obvious.").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                      Page 29
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

The California courts have in a few cases relied on aspects of the status of the victim that are more changeable than age or physical frailty, but have done so only when the victim was seriously, if only temporarily, incapacitated. *People v. Hoover*, 77 Cal.App.4th 1020, 92 Cal.Rptr.2d 208, 215-16 (2000) (extremely intoxicated victim in domestic violence case); *People v. White*, 117 Cal.App.3d 270, 172 Cal.Rptr. 612, 618 (1981) (shooting a victim already incapacitated from earlier gunshot), *abrogated on other grounds by People v. Scott*, 9 Cal.4th 331, 353 n. 16, 36 Cal.Rptr.2d 627, 885 P.2d 1040 (1994); *Loudermilk*, 241 Cal.Rptr. at 214 (sleeping victim); *Smith*, 156 Cal.Rptr. at 503 (sleeping victims). We found no case in which attacking a victim from behind was the sole basis for a finding of particular vulnerability.

*650 Here, there is no evidence that at the time of the crime Daria was less able than other victims to ward off attacks because of any such disability or incapacitation. Indeed, there was evidence from which a jury could conclude that Daria was generally a physically capable individual, as there was testimony at trial from both Daria and Butler that she had physically attacked Butler in the past.[FN17] A jury might have concluded that having one's back turned is similar to being asleep in the sense that both are temporary states, and that in each case the defendant takes advantage of a moment of greater assailability. But they are not so similar that we can say with confidence, particularly in light of the many cases focused on characteristics such as age and physical frailty, that a jury would conclude that an individual with her back turned is a "particularly vulnerable victim."

> FN17. We note that, in pointing to the fact that Daria had engaged in physical fights with Butler in the past, we do not mean to suggest that Daria was not clearly a victim of Butler's crime, or that she is in any way at fault for not having defended herself successfully in this instance.

We mean only to demonstrate that she did not have any inherent physical characteristics that would render her less capable of defending herself than most victims of assault.

Moreover, as we have already discussed, a victim must be not only vulnerable, but "particularly" vulnerable in relation to other victims of the same crime. *See, e.g., People v. Piceno*, 195 Cal.App.3d 1353, 241 Cal.Rptr. 391, 394 (1988) (holding that it was error to apply the particularly vulnerable victim factor to a conviction for vehicular manslaughter because, while "[n]o one could possibly deny the victim here was vulnerable[,] ... all victims of vehicular manslaughter ... were vulnerable"); *People v. Flores*, 115 Cal.App.3d 924, 171 Cal.Rptr. 777, 778-79 (1981) (applying particularly vulnerable victim aggravator because of the victim's young age was inappropriate because all victims of the crime of oral copulation with an individual under 16 are young).[FN18] The particularly vulnerable victim aggravating factor was applied to Butler's conviction for domestic violence under Cal.Penal Code section 273.5. In interpreting section 273.5, the California Court of Appeal has noted that it was the purpose of the legislature in criminalizing domestic violence to protect individuals who are in a vulnerable position. *See People v. Mora*, 51 Cal.App.4th 1349, 59 Cal.Rptr.2d 801, 804-05 (1996). In other words, it is in the nature of domestic violence that its victims are vulnerable, because of their close relationship with their attacker, their attacker's typically greater physical strength, and their isolation in their homes. As a result, a jury could have concluded that Butler was not *more* vulnerable than other victims of domestic violence because she was attacked from behind.[FN19]

> FN18. The State argues that a recent California Court of Appeal case has limited the rule that a victim is only particularly vulnerable when other victims of the offense are not vulnerable in the same manner. *See People v. Weaver*, 149

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

Cal.App.4th 1301, 58 Cal.Rptr.3d 18, 29 (2007) (holding that victims of drunk driver were particularly vulnerable because driver was traveling in the wrong direction at night with her lights off). *Weaver*, however, purported to apply the rule that a victim must be particularly vulnerable, holding that most victims of vehicular manslaughter are not as vulnerable as the victims were in that case. *See id.* Moreover, *Weaver*, like all of the cases we have cited, is a California Court of Appeal case, and cannot overrule the many cases that have reached a different result on this issue. *See, e.g., Piceno*, 241 Cal.Rptr. at 394; *People v. McNiece*, 181 Cal.App.3d 1048, 226 Cal.Rptr. 733, 739 (1986), *overruled on other grounds by People v. Flood*, 18 Cal.4th 470, 76 Cal.Rptr.2d 180, 957 P.2d 869 (1998); *Bloom*, 190 Cal.Rptr. at 865.

FN19. In concluding that allowing a judge to find the "particularly vulnerable victim" factor was not harmless, we do not hold that the trial court was wrong as a matter of California law when it found that Daria was a particularly vulnerable victim because she was struck from behind. We hold only that a jury properly instructed on California law and applying a reasonable doubt standard could well have found otherwise.

**\*651** In sum, we are left with "grave doubt" as to whether a jury would have found, beyond a reasonable doubt and based solely on the circumstance of being attacked from behind, that Daria was a "particularly vulnerable" victim of domestic violence. The *Apprendi* error was therefore not harmless with regard to the first aggravating factor. *See O'Neal*, 513 U.S. at 445, 115 S.Ct. 992 ("[W]e conclude that, when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief.").

**2. Probationary Status.**

[28] Whether a jury would have found Butler's probationary status beyond a reasonable doubt turns out to be, on the record in this case, a difficult question to answer. The record before the district court does not reveal what evidence on the probation issue was presented to the state trial court. We therefore remand to the district court for an evidentiary hearing on that question.

The state trial court opened the sentencing proceeding by stating, "I've read and considered the probation report in this case." After statements from the prosecutor and defense counsel, the judge found that Daria Butler was a particularly vulnerable victim and that Butler "was on probation at the time the crime was committed." In response to the judge's second finding, Butler's lawyer suggested that the probation aggravating factor be stricken because "there is no indication that he was noncompliant except for this."

The statement of defense counsel at sentencing suggests that Butler acknowledged, or at least did not dispute, that he was on probation at the time of the crime. Even assuming, however, that defense counsel's statement was sufficiently specific as to constitute an admission, we may not consider it in determining whether the *Apprendi* error in Butler's sentencing was harmless. *See Salazar-Lopez*, 506 F.3d at 755.

We are left, then, to determine whether the evidence presented by the prosecution at sentencing is sufficient to render the error harmless. Unfortunately, the record simply does not reveal what that evidence was. Having reviewed all the submissions to the district court in this case, we have not found a probation report or any other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                                    Page 31
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)

document that reflects Butler's probationary status at the time of the crime. At oral argument, the government acknowledged that it did not submit the probation report read by the sentencing judge to the district court. We thus cannot be certain what evidence was presented to the state trial court on the question of Butler's probationary status. Yet, to determine whether an *Apprendi* error was harmless we must examine the whole record, including the evidence presented by the government at sentencing. We therefore cannot make our determination without further factfinding as to what evidence was presented at sentencing.

We recognize that neither of the parties has requested an evidentiary hearing on this issue. Further factfinding on this issue is necessary, however, not to assist either of the parties in meeting a burden of proof as to harmlessness, but to assist the court in making an accurate determination. *See Frantz,* 513 F.3d at 1023 (remanding to district court for evidentiary hearing to determine circumstances in which in chambers conference in absence *652 of the petitioner was conducted); *see also Mancuso v. Olivarez,* 292 F.3d 939, 949 n. 4 (9th Cir.2002) ("[W]hether a trial error had a substantial and injurious effect is not to be analyzed in terms of burdens of proof."). We therefore vacate the grant of a writ of habeas corpus to Butler and remand for an evidentiary hearing on what evidence was presented to the state trial court in support of the allegation that Butler was on probation at the time of his crime.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for proceedings not inconsistent with this opinion.[FN20]

FN20. Butler also contends that he must be resentenced under California law as it existed at the time of his initial sentencing. Following the decision in *Cunningham,* the California legislature amended its statutes such that imposition of the lower, middle, or upper term is now discretionary and does not depend on the finding of any aggravating factors. *See* Cal.Penal Code § 1170(b) (2007). In *People v. Sandoval,* 41 Cal.4th 825, 62 Cal.Rptr.3d 588, 161 P.3d 1146 (2007), the California Supreme Court addressed the appropriate procedure for resentencing individuals who had been sentenced under the prior version of the law, and concluded that it need not decide whether the 2007 amendments to the penal code were retroactive, because it could simply judicially "reform" the previous law to require sentencing in accordance with the principles of the 2007 amendments. *Id.* at 849, 62 Cal.Rptr.3d 588, 161 P.3d 1146.

Butler argues that applying this judicial reformation of the law violates the ex post facto principles contained in the Due Process Clause of the Fourteenth Amendment. *See Bouie v. City of Columbia,* 378 U.S. 347, 352-55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). As Butler acknowledges, however, this question is controlled by *United States v. Dupas,* 419 F.3d 916 (9th Cir.2005), in which we held that retroactive application of the remedial opinion in *Booker* does not violate the Due Process Clause. *Id.* at 921.

Each party shall bear its own costs on appeal.

C.A.9 (Cal.),2008.
Butler v. Curry

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

528 F.3d 624                                                                                           Page 32
528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily Journal D.A.R. 8485
(Cite as: 528 F.3d 624)


528 F.3d 624, 08 Cal. Daily Op. Serv. 6958, 2008 Daily
Journal D.A.R. 8485


END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:   **Parra v. Tilton**
No.:    **08CV0472 J (LSP)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On July 10, 2008, I served the following documents: **AMENDED ANSWER PURSUANT TO ORDER OF THE COURT WITH MEMORANDUM OF POINTS AND AUTHORITIES** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Victor Parra, Jr.
P-58682
Richard J. Donovan Correctional Facility
P.O. Box 799006
San Diego, CA 92179-9002

## Electronic Mail Notice List

I have caused the above-mentioned document(s) to be electronically served on the following person(s), who are currently on the list to receive e-mail notices for this case: None

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing): Victor Parra at the above-named address.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 10, 2008, at San Diego, California.

| Anna Herrera | _(signature)_ |
|---|---|
| Declarant | Signature |

SD2008800671
80258568.wpd